Wilbur **McCLELLAND**, Appellant,

v.

**HOGAN PERSONNEL,
LLC; Defendant,**

State of Missouri Division of
Employment Security,
Respondent.

No. WD 61798.

Missouri Court of Appeals,
Western District,
Division Three.

Aug. 19, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 30, 2003.

Application for Transfer Denied Oct. 28, 2003.

Van Bruce Adams, California, MO, for Appellant.

Sharon Ann Willis, Kansas City, MO, for Respondent

Before ROBERT G. ULRICH, P.J., VICTOR C. HOWARD and THOMAS H. NEWTON.

ROBERT G. ULRICH, Judge.

Wilbur McClelland ("Employee") appeals the Labor and Industrial Relations Commission's (the "Commission") order finding that he was discharged for misconduct connected to his work and denying him four weeks of unemployment benefits pursuant to section 288.050.2, RSMo 2000. Employee claims that the Commission erred in denying him four weeks of unemployment because he was not discharged due to misconduct connected to his work. The judgment of the Commission is reversed.

### Factual and Procedural History

Employee was employed by Hogan Personnel, LLC ("Employer") from October 3, 2001, to April 18, 2002, as a tractor-trailer driver. His job was to move live turkeys from the farm to the Cargill poultry processing plant in California, Missouri. On April 18, 2002, Employee was driving one of Employer's tractor-trailers from the Cargill plant in California, Missouri, to a turkey farm in Florence, Missouri. Before leaving the plant, Employee inspected the semi tractor-trailer. The turkey trailer is connected to the hitch on the semi tractor truck by a pin with a lever that allows the trailer to turn as it operates. If the pin is not securely latched, the turkey trailer will separate from the truck. Department of Transportation regulations require a driver to conduct a visual inspection of the tractor-trailer before starting the trip.

This inspection includes checking the fifth-wheel connection to make sure the trailer pin is secure.

Employee made two trips from the plant to the farm. On the first trip, Employee took a load of turkeys from the farm to the plant without incident. Then Employee returned to the farm to pick up a second load of turkeys. Employee momentarily stopped at the barn for the loading crew to load the trailer with a second batch of turkeys. After the load was completed, Employee drove away from the barn. As he was driving away from the barn, the turkey trailer detached from the truck and turned over. The load of turkeys was lost and the trailer was badly damaged. Employer discharged Employee on April 18, 2002, for failing to inspect the tractor-trailer before leaving the farm.

Employee filed a claim for unemployment compensation benefits on July 15, 2002. Employer challenged the claim on the grounds that Employee had violated Employer's safety policy and procedures by failing to inspect the tractor-trailer before driving to the plant on the second trip. Employer contended that Employee's failure to follow proper safety procedures resulted in a preventable accident. The Missouri Division of Employment Security determined that Employee was disqualified for seven weeks of unemployment benefits because he was discharged for misconduct connected with his work. Employee appealed the decision to the Appeals Tribunal of the Division of Employment Security (the "Appeals Tribunal").

The Appeals Tribunal conducted a telephone conference hearing on June 19, 2002. Two witnesses were present at the hearing. Robert Solomon ("Mr. Solomon"), Personnel Manager for Employer, testified on Employer's behalf and Employee testified on his own behalf. Mr. Solomon testified that Employer's safety procedures require Employee to inspect the fifth-wheel connection each time the truck is stopped. Employee testified that he was unaware of this safety procedure requirement. Evidence was admitted that Employee had signed a form stating that he had received, read, and understood Employer's safety and policy manual. Employee testified that he had never observed any of Employer's drivers performing the additional inspection. The Appeals Tribunal affirmed the Division's decision.

Employee filed an application for review of the Appeals Tribunal's decision to the Commission. The Commission affirmed that portion of the Appeal Tribunal's decision finding that Employee was discharged for misconduct related to his employment. The Commission reversed the period of disqualification from seven to four weeks. This appeal followed.

Employee asserts one point on appeal. He claims that the Commission erred in finding that his failure to check a truck-trailer connection at a farm stop constituted misconduct connected with his work in that a single, isolated instance of alleged negligence is not, as a matter of law, sufficient cause for denying him unemployment benefits for four weeks.

### Standard of Review

Appellate review of an unemployment compensation case is governed by section 288.210, RSMo 2000 which provides, that the court on appeal, may review issues of law and "may modify, reverse, remand for rehearing, or set aside the decision of the commission" on grounds that:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

On appeal, the court is not bound by the Commission's conclusions of law or the Commission's application of law to the facts. *Miller v. Kansas City Station Corp.*, 996 S.W.2d 120, 122 (Mo.App. W.D. 1999). Questions of law are reviewed independently. *George's Processing, Inc. v. Ottendorf,* 57 S.W.3d 923, 925 (Mo.App. S.D.2001) (citing *Miller,* 996 S.W.2d at 122). Whether the Commission's findings support the conclusion that an employee was guilty of misconduct is a question of law. *Miller,* 996 S.W.2d at 122 (citing *Pemiscot County Mem'l Hosp. v. Mo. Labor & Indus. Relations Comm'n,* 897 S.W.2d 222, 226 (Mo.App. S.D.1995)).

■ Section 288.020.2, provides that Missouri Employment Security Law, Chapter 288, RSMo, "shall be liberally construed to accomplish its purpose to promote employment security ... by providing for the payment of compensation to individuals in respect to their unemployment." "In keeping with this policy, disqualifying provisions in the law are strictly construed against the disallowance of benefits." *Kennett Bd. of Pub. Works v. Shipman,* 15 S.W.3d 792, 795 (Mo.App. S.D. 2000) (quoting *City of Kansas City v. Arthur,* 998 S.W.2d 870, 873 (Mo.App. W.D. 1999)).

## Analysis

■ In his only point relied on, Employee claims that the Commission erred in partially denying his claim for unemployment benefits by concluding that he had been discharged for misconduct connected with his work. Specifically, Employee contends that evidence of one isolated incident of negligence is insufficient, as a matter of law, to constitute misconduct related to his work sufficient to justify partially denying him unemployment compensation benefits. Section 288.050.2 prohibits a claimant from recovering unemployment compensation benefits when the claimant is discharged for misconduct connected with his work. Generally, a claimant has the burden of showing that he or she is entitled to unemployment benefits. *City of Jennings v. Div. of Employment Sec.,* 943 S.W.2d 330, 334 (Mo.App. E.D.1997). However, "when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim or misconduct connected with work." *Miller,* 996 S.W.2d at 124.

Section 288.050.2 does not define the term "misconduct." Missouri courts have uniformly applied the following definition of "misconduct" to the unemployment compensation act:

[A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of the standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Sain v. Labor & Indus. Relations Comm'n,* 564 S.W.2d 59, 62 (Mo.App.1978) (quoting *Laswell v. Indus. Comm'n of Mo.,* 534 S.W.2d 613 (Mo.App.1976)) (citing 76 Am.Jur.2d, Unemployment Compensation § 52, p. 945). Employee argues that the Commission erred in finding that he was negligent for failing to conduct an fifth-wheel inspection before leaving the turkey farm and that such negligence constituted misconduct connected with his work. The Commission did not, however, find that

Employee's behavior constituted misconduct connected with his work on the basis of negligence. Rather, the Commission, adopting the Appeals Referee's findings of fact and conclusions of law, found that "Employee had willfully disregarded the interests of the employer and deliberately violated its rules." [1] For that reason, Employee's point on appeal is flawed.

Respondent's argument on appeal is similarly flawed. In its brief, Respondent claims that the Commission did not err in ruling that Employee was disqualified from receiving unemployment compensation benefits because Employee disregarded the standards of behavior which the employer has a right to expect or Employee's failure to inspect the fifth-wheel connection was negligence and constituted misconduct connected with his work. As noted above, the Commission's decision characterizes Employee's behavior as willful and a deliberate violation of the Employer's rules. It does not base its decision on the fact that Employee was negligent or that he disregarded standards of behavior that Employer had a right to expect of its employees. Neither Employee nor Respondent properly addressed the Commission's error in their points on appeal. Nonetheless, the merits of Employee's point on appeal are addressed.

■■■■ The violation of a reasonable work rule can constitute misconduct. *Hurlbut v. Labor & Indus. Relations Comm'n,* 761 S.W.2d 282, 285 (Mo.App. S.D.1988). "[V]iolation of a work rule is not[, however,] dispositive proof of misconduct connected with work. Instead, a reasonable work rule serves as a relevant factor in determining if the behavior at issue is in fact misconduct and if such misconduct is connected with work." *Baldor Elec. Co. v. Reasoner,* 66 S.W.3d 130, 134 (Mo.App. E.D.2001). Determining whether an employee's conduct constitutes "misconduct connected with his work" is a "troublesome question," and "there is more to the issue than a simple or deliberate violation of an employer's rule of conduct." *Pemiscot County Memorial Hosp.,* 897 S.W.2d at 226 (quoting *Powell v. Div. of Employment Sec.,* 669 S.W.2d 47, 50 (Mo.App. W.D. 1984) (quoting *Laswell v. Indus. Comm'n of Mo.,* 534 S.W.2d 613, 616 (Mo.App. 1976))). Poor workmanship, lack of judgment, or the inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct. *Id.* "There is a 'vast distinction' between the violation of a rule of an employer that would justify the discharge of the employee and a violation of such rule that would warrant a determination of misconduct connected with the employee's employment so as to disqualify him for unemployment compensation benefits." *Id.*

The reason the Commission gave for its decision was that Employer had a right to expect Employee to read its safety manual and follow its rules. Employee contends that his failure to check the fifth wheel connection after receiving the second load of turkeys was neither a willful disregard of Employer's interests nor a deliberate violation of its rules because he was unaware of Employer's policy requiring truck drivers to check the tractor-trailer after each stop. He argues that Employer failed to make such a requirement known to him or to reduce such a requirement to

---

1. The Appeals Referee's decision provides, in pertinent part:

   The employer had a right to expect [Employee] to read its safety manual and to follow its rules. By failing to follow a requirement that reasonably augmented the DOT rule, with a serious accident resulting, [Employee] willfully disregarded the interests of the employer and deliberately violated its rules.

writing. The record established that Employee signed a form entitled "handbook/manual distribution" that stated he had received, read, and understood Employer's safety and policy manual. Employee testified that although he signed the form, he did not remember receiving the safety manual and, therefore, denied that he intentionally disregarded the requirement. Thus, neither his testimony nor any other evidence provides additional proof that Employee willfully disregarded the requirement.

■■■■ Insufficient evidence exists to support the Commission's finding that Employee willfully disregarded Employer's interests and deliberately violated its rules. Willful is defined as "[p]roceeding from a conscious motion of the will; voluntary; knowingly, deliberate; intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary." BLACK'S LAW DICTIONARY 1599 (6th ed.1990). To willfully disregard Employer's interests, Employee had to be aware of the requirement and knowingly or consciously violate it. *Accord Heitczman v. Unemployment Comp. Bd. of Review,* 162 Pa.Cmwlth. 275, 638 A.2d 461, 464 (1994) (holding that employee's knowledge of a work rule and subsequent failure to follow it constituted willful conduct sufficient to constitute misconduct and deny unemployment compensation benefits). The evidence does not establish that Employee was conscious of the requirement and willfully disregarded it when the event occurred even though he signed a form when he was employed about six months earlier stating that he had received the safety manual and understood its contents. An employer does have a right to expect an employee will read its safety manual and follow its rules. Employee's lack of awareness may have been sufficient to dis-charge him from employment but does not rise to the level of willful or deliberate conduct sufficient to deny him unemployment compensation absent additional evidence. *See Powell,* 669 S.W.2d at 50 (citing *Laswell,* 534 S.W.2d at 616 (noting that "whether certain conduct constitutes 'misconduct connected with his work' is a 'troublesome question,' and there is more to the issue than a *simple or deliberate violation of an employer's rule of conduct*") (emphasis added)).

Under the circumstances of this case, substantial and competent evidence does not exist to support the Commission's finding that Employee was discharged for misconduct connected with his work. As a matter of law, Employee's failure to follow Employer's requirement to inspect the fifth-wheel connection after every stop neither proves his willful disregard of Employer's interests nor his deliberate violation of its rules sufficient to constitute misconduct connected with his work. Employee's point is granted.

The judgment of the Commission finding that Employee was discharged for misconduct connected with his work and denying him four weeks of unemployment compensation benefits is reversed.

All concur.