Delores Ann Reiner HOOVER,
Appellant Pro Se,

v.

COMMUNITY BLOOD CENTER,
Defendant,

Division of Employment Security,
Respondent.

No. WD 64060.

Missouri Court of Appeals,
Western District.

Jan. 18, 2005.

Delores Ann Reiner Hoover, St. Joseph, pro se.

Cynthia Ann Quetsch, Jefferson City, for respondent.

Before RONALD R. HOLLIGER, Presiding Judge, PATRICIA BRECKENRIDGE, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Appellant Delores Hoover appeals from an order issued by the Labor and Industrial Relations Commission disqualifying her from receiving unemployment benefits for five weeks pursuant to § 288.050.2 based upon a finding that Appellant was terminated from her employment at the Community Blood Center for misconduct related to work.

Appellant, a licensed practical nurse, began working for the Community Blood Center in St. Joseph, Missouri, on September 18, 2001. Appellant was employed as a donor care technician/phlebotomist. In that position, Appellant was charged with reviewing the histories provided by would-be donors and collecting blood donations from suitable donors.

On November 26, 2003, Appellant was called into the Director's office and counseled about three errors that Appellant had made in either reviewing donor history forms or failing to place unit number labels on the donation bags. Those mistakes had resulted in the destruction of the collected blood units. Appellant was told that, for the next month, she would need to have a supervisor review and sign off on her work before the donor left the donation site.

On December 9, 2003, Appellant failed to place a unit number label on the corresponding donor history form. When this mistake was later discovered, the blood unit was destroyed.

On December 19, 2003, Appellant failed to notice that a potential donor had indicated on her donor history form that she did not feel well that day. After the unit was collected, Appellant's supervisor

signed off on her work. When the oversight on the donor history form was later discovered, the blood unit was destroyed.

On December 23, 2003, the Community Blood Center received a complaint from a donor about a conversation the donor had previously had with Appellant while waiting in the lobby to give blood. The donor was upset by comments that Appellant had made to her while discussing the donor's upcoming knee-replacement surgery. During the course of that discussion, Appellant had informed the donor that the tools used in that type of surgery were similar to the tools in her husband's garage. Appellant also informed the donor that things can go wrong during surgery and that it would be advisable to have a medical directive drawn up in case problems arose.

On January 6, 2004, Appellant received a separation letter from the Community Blood Center terminating her employment. That letter stated:

This letter is to inform you that your employment with the Community Blood Center is being terminated effective immediately for the following incidents.

— On 11/26/03 you were counseled for errors related to Donor History forms and no Unit Number Labels, resulting in the destruction of three units. At the time of this counseling you were placed on a probationary period of 30 days wherein you were to have your paperwork signed off on by a supervisor.

— On 12/09/03 you had another incident where you failed to put the Unit Number Label on the DHF, resulting in a destroyed unit.

— On 12/19/03 you had an error on a Donor History Form, resulting in another destroyed unit.

— On 12/23/03 a customer complaint was received from a donor stating that inappropriate comments you made regarding her pending surgery upset her.

Due to your lack of judgment regarding these incidents and failure to follow SOP [standard operating procedure] resulting in the destruction of units the Community Blood Center consequently has no choice but to immediately sever this employment relationship.

Later that day, Appellant filed a claim for unemployment benefits. Shortly thereafter, on January 8, 2004, the Community Blood Center filed a letter of protest to Appellant's claim asserting that Appellant had been "discharged from employment with the Community Blood Center for failure to follow Standard Operating Procedures." The Community Blood Center attached a copy of the termination letter to its letter of protest.

On January 21, 2004, a deputy with the Missouri Department of Employment Security issued his determination that Appellant should be disqualified from unemployment benefits for five weeks because she had been "discharged for misconduct connected with work." The deputy determined that the comments that Appellant had made to the donor who had surgery pending were inappropriate and that making such comments constituted misconduct connected to work.

Appellant subsequently filed an appeal of the Deputy's determination with the Appeals Tribunal. A hearing was conducted on Appellant's claim on February 11, 2004. Appellant testified on her own behalf at that hearing, and one of Appellant's supervisors, Dorothy Bolenbaugh, testified on behalf of the Community Blood Center. On February 20, 2004, the Appeals tribunal issued its decision, affirming the Deputy's determination and disqualifying Appel-

lant from five weeks of unemployment benefits. The Appeals Tribunal found that Appellant had been discharged for "causing units of blood to be destroyed and for remarks she had made to a donor there to give blood for the donor's scheduled surgery." The Appeals Tribunal found that Appellant had "disregarded the employer's interest and expected standards of behavior by causing units of blood to be destroyed and making inappropriate remarks to a donor about the donor's surgery." The Appeals Tribunal concluded that Appellant had therefore been terminated for misconduct connected with work.

Appellant appealed the decision of the Appeals Tribunal to the Labor and Industrial Relations Commission ("the Commission"). On March 29, 2004, the Commission affirmed the decision of the Appeals Tribunal and adopted that opinion as its own.

In her sole point on appeal, Appellant contends that the Commission's determination that she was terminated for misconduct connected with her work was not supported by sufficient evidence. She further argues that the Commission failed to make any finding that she willfully, intentionally, or deliberately disregarded her employer's interests and expected standards of behavior as required for such behavior to constitute "misconduct" under Missouri Law and that the evidence would not support such a finding.

 Our review of the Commission's decision is governed by Section 288.210, which provides, in relevant part:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall

be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

> (1) That the commission acted without or in excess of its powers;
> (2) That the decision was procured by fraud;
> (3) That the facts found by the commission do not support the award;
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

*Quik 'N Tasty Foods, Inc. v. Division of Employment Sec.*, 17 S.W.3d 620, 623–24 (Mo.App. W.D.2000) (quoting § 288.210). "'[W]hether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record.'" *Dolgencorp, Inc. v. Zatorski*, 134 S.W.3d 813, 817 (Mo.App. W.D.2004) (quoting *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003)). "'An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence.'" *Id.* (quoting *Hampton*, 121 S.W.3d at 223). Furthermore, on appeal, we are "not bound by the Commission's conclusions of law or the Commission's application of law to the facts." *McClelland v. Hogan Pers., LLC*, 116 S.W.3d 660, 664 (Mo.App. W.D. 2003).

 Pursuant to § 288.050.2, if an individual is fired for misconduct connected with his or her work, that individual may be denied employment security benefits for four to sixteen weeks. *Dixon v. Division of Employment Sec.*, 106 S.W.3d 536, 540 (Mo.App. W.D.2003).[1] The employment security statutes fail to define the

---

1. The duration of the period over which a claimant is denied benefits is determined by the deputy based upon the seriousness of the misconduct. *Dixon*, 106 S.W.3d at 540.

term "misconduct"; however, Missouri appellate courts have consistently defined "misconduct" as:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Zatorski,* 134 S.W.3d at 818 (quoting *City of Kansas City v. Arthur,* 998 S.W.2d 870, 873 (Mo.App. W.D.1999)). With regard to each of these ways "in which an employee can engage in misconduct, there is the requirement that the employee willfully violate the rules or standards of the employer." *Id.* " '[W]hether an employer has solid grounds to terminate an employee is not the same issue as whether the former employee qualifies for compensation.' " *Dixon,* 106 S.W.3d at 540 (quoting *Miller v. Kansas City Station Corp.,* 996 S.W.2d 120, 124 (Mo.App. W.D.1999)). " 'There is a 'vast distinction' between the violation of a rule of an employer that would justify the discharge of the employee and a violation of such rule that would warrant a determination of misconduct connected with the employee's employment so as to disqualify him [or her] for unemployment compensation benefits.' " *McClelland,* 116 S.W.3d at 665 (quoting *Pemiscot County Mem'l Hosp. v. Missouri Labor & Indus. Relations Comm'n,* 897 S.W.2d 222, 226 (Mo.App. S.D.1995)). "Poor workmanship, lack of judgment, or the inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct." *Id.*

■ In general, a claimant bears the burden of demonstrating that he or she is entitled to unemployment benefits; "[h]owever, 'when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim of misconduct connected with work.' " *Id.* at 664 (quoting *Miller,* 996 S.W.2d at 124). Thus, the Community Blood Center bore the burden of proving by a preponderance of the evidence that Appellant "willfully violate[d] the rules or standards of the employer," *Zatorski,* 134 S.W.3d at 818, and that her actions were not simply the result of poor workmanship, lack of judgment, or an inability to do the job. *McClelland,* 116 S.W.3d at 665.

■ In this case, the Community Blood Center presented evidence that Appellant failed to properly place unit number labels on collection bags on two or three occasions and had failed to notice problems with donor history forms on two or three occasions. These mistakes resulted in the blood units involved being destroyed. The final two of these mistakes occurred after Appellant had been reprimanded for the first three instances.

The Community Blood Center also presented testimony establishing that Appellant had made some remarks to a donor who was about to undergo knee replacement surgery and that the donor had complained about these comments to the employer. In answering the donor's questions about the surgical procedure, Appellant told the donor that the tools that would be used in the surgery were similar to those the donor's husband might have in their garage. Appellant also told the donor that things can go wrong with any surgery and suggested to the donor that she draft an advanced directive prior to surgery in case anything went wrong. During the hearing, Appellant admitted making those statements to the donor and

that she knew the donor was nervous about the surgery.

Ultimately, the Commission found that Appellant was guilty of misconduct connected with her work because she had "disregarded the employer's interest and expected standards of behavior by causing units of blood to be destroyed and by making inappropriate remarks to a donor about the donor's surgery." The question now before this Court is whether the Commission's legal finding that this behavior constituted misconduct was sufficiently supported by the aforementioned evidence.

With regard to the mistakes made by Appellant related to the unit number labels and donor history forms, the Community Blood Center has never alleged, let alone proven, that Appellant willfully committed those errors. Nothing in the record indicates that these errors were anything more than negligent omissions on the part of Appellant. While those mistakes made by Appellant certainly constitute acts of negligence and/or poor workmanship and are reasonable grounds for firing Appellant, "poor workmanship and mere negligence do not rise to the level of misconduct" for purposes of the unemployment compensation law. *Dixon*, 106 S.W.3d at 541. Absent evidence that Appellant deliberately or purposefully committed these errors, she cannot properly be found to have committed an act of misconduct. *See id.* at 542.

With regard to Appellant's comments to the donor about the donor's upcoming surgery, Appellant obviously intended to make the comments to the donor and those statements could certainly be viewed as insensitive and inappropriate. The issue, however, is whether Appellant intended to disregard the standard of behavior her employer had the right to expect from her in making those statements. Appellant testified that she had simply done her best

to answer questions posed to her by the donor about the donor's upcoming surgery. While the Commission was not required to accept Appellant's testimony as credible, the Community Blood Center did not allege at any time, let alone prove, that any of the comments made by Appellant were untrue or that Appellant had any improper motive for making the statements. Indeed, in the separation letter given to Appellant, the Community Blood Center cited Appellant's "lack of judgment" regarding this incident. Similarly, the only witness to testify on behalf of the Community Blood Center, Appellant's supervisor, Dorothy Bolenbaugh, testified that Appellant demonstrated a "poor lack of judgment" in making the comments to the donor.

On appeal, the Division of Employment Security offers the following argument regarding why Appellant's comments to the donor should be deemed to be "misconduct":

> Claimant showed poor judgment in responding to the donor's inquiries, showing a lack of sensitivity and tact when she described the instruments to be used in the surgery. Regardless of the accuracy of Claimant's statements, they would not in anybody's mind be the kind of statements that would tend to reassure a person who is already nervous about undergoing surgery. This was indeed extremely poor judgment on Claimant's part, and this conduct is sufficient to rise to the level of misconduct under the Employment Security Law.

The Division never asserts that the Claimant's comments were the result of anything more than a lack of judgment or identifies any evidence that would support such a conclusion.

As noted, *supra*, " 'poor workmanship, *lack of judgment* or the inability to do the job do not disqualify a claimant form receiving benefits on the basis of miscon-

duct.'" *Dixon,* 106 S.W.3d at 540 (quoting *Powell v. Division of Employment Sec.,* 669 S.W.2d 47, 51 (Mo.App. W.D.1984)) (emphasis added). The evidence simply does not support a determination that Appellant's comments were the result of anything more than simple lack of judgment and, therefore, does not establish that Appellant intentionally disregarded the standards of behavior that her employer had the right to expect of its employees. Accordingly, the Commission erred in finding that this behavior constituted "misconduct" under § 288.050.2.

The Commission's decision is reversed.

All concur.