**Janet CROY, Appellant,**

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

**No. 27289.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 6, 2006.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

John M. Albright, Moore, Walsh & Albright LLP, Poplar Bluff, for appellant.

Cynthia A. Quetsch, Jefferson City, for Respondent, Div. of Employment Security.

ROBERT S. BARNEY, Judge.

Appellant Janet Croy ("Claimant") appeals from an order of the Labor and Industrial Relations Commission ("the Commission") affirming the decision of the Appeals Tribunal of the Missouri Division of Employment Security ("the Division"). In its order, the Commission found that Claimant was fired from her position with Nordyne, Inc., ("Employer") for misconduct, and therefore was disqualified from receiving unemployment compensation benefits under section 288.050.[1] Claimant now raises one point of Commission error, discussed below.

The scant record reveals that Claimant was discharged from work with Employer on April 21, 2005.[2] Claimant had been working for Employer doing "line work" since May of 2002 and her last day of work was April 17, 2005. According to Claimant, she did not return to work after April 17, 2005, because

> Wednesday I overslept and I called [my supervisor] and told him. And I told [my supervisor] that I'd be there by 11:00 unless I went to the doctor because he told me I had to be there at 11:00. Well, I tried to call him back and tell him I was going to the doctor. I couldn't get an answer so I left him a message on his voice mail. Well, I called him the next day to let him know I had a doctor's excuse and he told me it was too late. I was already fired.

Claimant stated that her supervisor told her she was fired "because [she] gave him two different reasons for leaving, not being there." She stated that she did not think telling him that she had overslept *and* that she might go to the doctor "would make a difference...." Claimant admitted that at the time she told her supervisor she might go to the doctor, she did not actually have a doctor's appointment, but she had "been sick for a while."

Thereafter, Claimant filed her claim for unemployment benefits with the Division. After reviewing her claim, a deputy found that Claimant was disqualified from receiving unemployment benefits because "[s]ection 288.050 RSMo, provides for disqualification if the Claimant is discharged for misconduct connected with work." In sup-

---

1. Section 288.050 states in pertinent part:

2. If a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work, such claimant shall be disqualified for waiting week credit and benefits, and no benefits shall be paid nor shall the cost of any benefits be charged against any employer for any period of employment within the base period until the claimant has earned wages for work insured under the unemployment laws of this state or any other state as prescribed in this section. In addition to the disqualification for benefits pursuant to this provision the division may in the more aggravated cases of misconduct, cancel all or any part of the individual's wage credits, which were established through the individual's employment by the employer who discharged such individual, according to the seriousness of the misconduct....

3. Absenteeism or tardiness may constitute misconduct regardless of whether the last incident alone constitutes misconduct. In determining whether the degree of absenteeism or tardiness constitutes a pattern for which misconduct may be found, the division shall consider whether the discharge was the result of a violation of the employer's attendance policy, provided the employee had received knowledge of such policy prior to the occurrence of any absence or tardy upon which the discharge is based.

All statutory references are to RSMo Cum. Supp.2005, unless otherwise stated.

2. The transcript in this matter consists of five pages which sets out a telephone hearing conducted by a referee for the Appeals Tribunal on June 10, 2005. There was no appearance by Employer. The only testimony taken by the referee was that of Claimant. Employer filed no brief in this matter.

port of this finding that Claimant's discharge was due to misconduct, the deputy noted that "Claimant was discharged because she was absent on 04–20–05. The Claimant did not report her absence to the Employer until after her scheduled start time." As a result, the deputy found Claimant was disqualified for waiting week credit[3] and benefits until she had earned wages equal to "six times the weekly benefit amount in insured work after the disqualifying act."

Claimant appealed the matter to the Appeals Tribunal. The Appeals Tribunal upheld the finding of the deputy. It found that Claimant's "actions of not reporting for her scheduled shift as instructed is a wanton and willful a[sic] disregard for the employer's interest and a disregard of the standards of behavior the employer has a right to expect of an employee." Claimant then filed her application for review with the Commission on June 23, 2005. The Commission affirmed the decision of the Appeals Tribunal "because it is fully supported by the competent and substantial evidence on the whole record. . . ." This appeal by Claimant followed.

■ On appeal, Claimant essentially maintains the Commission's finding was not supported by sufficient and competent evidence. Claimant argues "the employer bears the burden of proof to show misconduct . . ." and in the present matter Employer failed to appear for the hearing, thus, Employer did not carry its burden of proof. Further, Claimant maintains the Commission "must determine whether the degree of absenteeism or tardiness constitutes a pattern . . ." based also on consideration of Employer's attendance policy.

Accordingly, Claimant asserts that as there was no evidence of Employer's work policy, then one absence could not amount to misconduct.

■ Our review of the Commission's decision is governed by section 288.210, RSMo 2000, which provides, in relevant part:

The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

*See also Dixon v. Div. of Employment Sec.*, 106 S.W.3d 536, 539 (Mo.App.2003). However, "[t]o the extent this appeal involves questions of law . . . no deference is given to the Commission." *Id.* at 540. "Thus, because the issue of 'whether an employee's actions constitute misconduct associated with the employee's work is a question of law,' this [C]ourt is 'not bound by the Commission's determination on this issue.'" *Id.* (quoting *City of Kansas City v. Arthur*, 998 S.W.2d 870, 873 (Mo.App. 1999)); *see also Fruehauf Div., Fruehauf*

---

**3.** Section 288.030(30) defines "waiting week" as

the first week of unemployment for which a claim is allowed in a benefit year or if no waiting week has occurred in a benefit year

in effect on the effective date of a shared work plan, the first week of participation in a shared work unemployment compensation program pursuant to section 288.500.

*Corp. v. Armstrong,* 620 S.W.2d 67, 68 (Mo.App.1981). "This remains true notwithstanding the fact that the Commission's interpretation of the statute is entitled to considerable weight." *Moore v. Swisher Mower & Mach. Co.,* 49 S.W.3d 731, 738 (Mo.App.2001); *see also Yellow Freight Sys. v. Thomas,* 987 S.W.2d 1, 3 (Mo.App.1998).

■ Unemployment compensation proceedings are governed by Chapter 288, the Missouri Employment Security Law. These provisions, created for the benefit of persons unemployed through no fault of their own, require liberal construction and disqualifying provisions of the law are to be strictly construed against the disallowance of benefits to unemployed but available workers. *Mo. Div. of Emp. Sec. v. Labor & Indus. Rel.,* 651 S.W.2d 145, 148 (Mo. banc 1983); *see also* § 288.020. "In short, judicial interpretations of the unemployment statutes have required that an employee not have *caused* his dismissal by his wrongful action or inaction or his choosing not to be employed." *Mo. Div. of Emp. Sec.,* 651 S.W.2d at 149.

Section 288.050.2 prohibits a claimant from recovering certain unemployment compensation benefits when the claimant is discharged for misconduct connected with his work, "depending upon the seriousness of the misconduct as determined by the deputy according to the circumstances in each case...." Section 288.030(24) defines "misconduct" as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or

of the employee's duties and obligations to the employer....

■ "Generally, a claimant has the burden of showing that he or she is entitled to unemployment benefits." *McClelland v. Hogan Pers., L.L.C.,* 116 S.W.3d 660, 664 (Mo.App.2003). "However, 'when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim or misconduct connected with work.'" *Id.* (quoting *Miller v. Kansas City Station Corp.,* 996 S.W.2d 120, 124 (Mo.App.1999)). As previously set out, "[w]hether the Commission's findings support the conclusion that an employee was guilty of misconduct is a question of law." *Id.*

■ The first issue we deal with is whether the Commission's interpretation of the law concerning misconduct is correct as it relates to the facts in this case. An employee can be found to have committed disqualifying misconduct under section 288.050.2 for violating a reasonable work rule. *Hurlbut v. Labor & Indus. Rel. Comm'n,* 761 S.W.2d 282, 285 (Mo.App. 1988). However, Employer must show by a preponderance of the evidence that Claimant willfully violated Employer's rules. *Hoover v. Cmty. Blood Center,* 153 S.W.3d 9, 13 (Mo.App.2005). "Our courts have ... held that 'there is a *"vast distinction"* between the violation of a rule of an employer that would justify the discharge of the employee and a violation of such rule that would warrant a determination of misconduct connected with the employee's employment so as to disqualify him for unemployment compensation benefits.'" *Kennett Bd. of Public Works v. Shipman,* 15 S.W.3d 792, 796 (Mo.App.2000) (quoting *Pemiscot Cty. Mem'l Hosp. v. Missouri Labor & Indus. Rel. Comm'n,* 897 S.W.2d 222, 226 (Mo.App.1995)). "Absenteeism in and of itself is not misconduct." *G.C. Servs. Ltd. P'ship v. Labor & Indus. Rel.*

*Comm'n,* 913 S.W.2d 411, 414 (Mo.App. 1996). "Clearly, absences due to illness or family emergency are absences caused through no fault of Employee and as such cannot be willful misconduct, especially if properly reported to Employer." *Garden View Care Ctr., Inc.,* 848 S.W.2d at 606.

Here, the record shows that Claimant had "been sick for a while." The unchallenged evidence reveals Claimant also had a "doctor's excuse from [her] doctor." Further, she called her supervisor to report she was going to the doctor and while she did not speak to him personally she did leave a voicemail message. "If Employer believed her reasons were false or inadequate, it could have required she bring in a medical excuse for [her] absence due to [the] claimed illness." *Id.* The record is devoid of a showing that Employer ever made such a request. Indeed, "[e]mployer failed to present *any* evidence that [Claimant's] claimed illness[ ] did not exist...." *Id.* at 606–07. "[Claimant's] illness alone did not constitute misconduct if it was properly reported to [E]mployer." *G.C. Servs. Ltd. P'ship,* 913 S.W.2d at 414.

Additionally, only one incident of tardiness or absenteeism was set out in the record. In mitigation, Claimant, upon arising, immediately reported to Employer that she would "be there by 11:00 unless [she] went to the doctor." "Without a more substantial explanation for [Claimant's] absence[ ], we cannot say [her] conduct reached a level sufficient to be misconduct connected with work." *Div. of Employ. Sec. v. Gardner–Denver Mach., Inc.,* 941 S.W.2d 13, 15 (Mo.App.1997). In the present matter, there was insufficient competent evidence to support the Commission's finding that Claimant violated Employer's work rules with "wanton or willful disregard...." § 288.030(24).

Additionally, as previously stated, while Claimant had the burden of proving she was eligible for unemployment benefits, that burden shifted to Employer once Employer claimed that Claimant was discharged for misconduct. *McClelland,* 116 S.W.3d at 664.[4] Here, Employer did not appear in this matter. It offered no evidence as to any misconduct by Claimant. More importantly, there is no evidence relating to Employer's policies regarding either absences or tardiness for its employees, nor is there any information as to Claimant's history of taking absences from work or being tardy so to provide a factual underpinning in support of the deputy and/or the referee's determination as required by section 288.050.2. The burden was on Employer to prove that Claimant

**4.** *See also Baldor Elec. Co. v. Reasoner,* 66 S.W.3d 130, 133 (Mo.App.2001) (holding that "Employer, not Claimant, bears the burden of proving by substantial and competent evidence that Claimant was discharged for misconduct connected with work"); *City of Kansas City,* 998 S.W.2d at 874 (holding that although generally claimant had burden of proving eligibility for unemployment benefits, that burden shifted to employer since employer claimed that claimant was discharged for misconduct); *Miller,* 996 S.W.2d 120, 124 (Mo.App.1999) (holding that "[a]lthough the employee has the burden of showing a prima facie case of eligibility [for unemployment benefits] ... when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim of misconduct connected with work"); *Tutwiler v. Fin–Clair Corp.,* 995 S.W.2d 497, 499 (Mo.App.1999) (holding that "Employer, not Claimant, bore the burden of proving by substantial and competent evidence that Claimant was discharged for misconduct connected with work"); *Garden View Care Ctr., Inc. v. Labor and Indus. Rel. Comm'n of Missouri,* 848 S.W.2d 603, 606 (Mo.App.1993) (holding that "[g]enerally, Employee has the burden to show she is entitled to unemployment benefits, but Employer has the burden of proving Employee was discharged for misconduct connected with work by competent and substantial evidence").

violated its rules. *Hoover*, 153 S.W.3d at 12. It does not appear to this Court that Employer was involved in this matter at any stage of the administrative process. Accordingly, it is our view that there was insufficient and competent evidence to support the Commission's finding that Claimant violated Employer's rules with *"wanton or willful disregard ...."* § 288.030(24) (emphasis added).

"It is the function of the reviewing court to decide whether upon the whole record the Commission could have reasonably made its findings and reached its result." *Tutwiler*, 995 S.W.2d at 499. Under the circumstances of this case, substantial and competent evidence does not exist to support the Commission's finding that Claimant was discharged for misconduct connected with her work. The order of the Commission is reversed and this matter remanded for further proceedings consistent with this opinion.

GARRISON, J., and BATES, C.J., concur.