The KANSAS CITY CLUB, Respondent,

v.

LABOR AND INDUSTRIAL RE-
LATIONS COMMISSION, et
al., Appellants,

and

William Holman, Defendant.

No. WD 46029.

Missouri Court of Appeals,
Western District.

Nov. 3, 1992.

Carol L. Clasby, Jefferson City, for appellants.

Mark Gail Flaherty, Kansas City, for respondent.

Before FENNER, P.J., and SHANGLER and KENNEDY, JJ.

FENNER, Presiding Judge.

Appellant, Labor and Industrial Relations Commission (Commission), appeals the decision of the circuit court reversing the decision of the Commission on a claim for unemployment benefits made against respondent, The Kansas City Club.

This cause arises from William Holman's claim against The Kansas City Club for unemployment benefits. Holman had been employed by The Kansas City Club as purchasing agent, with his last day of work being August 13, 1990. The Kansas City Club maintained that Holman quit his job

without cause while Holman maintained that he was discharged without cause.

A deputy for the Missouri Division of Employment Security initially determined that Holman was disqualified for benefits on a finding that he voluntarily quit his job without good cause attributable to his work or employer. Holman appealed that determination and the appeals tribunal reversed the deputy's decision and held that Holman was not disqualified for benefits by reason of his discharge on August 13, 1990. The Kansas City Club filed an application for review with the Commission. The Commission denied the application for review and adopted the decision of the appeals tribunal. The Kansas City Club then appealed to the circuit court which reversed the decision of the Commission, and directed that the Commission enter its order finding Holman disqualified for benefits.

The record reflects that Holman was called to the office of Stephen Joyce, general manager of The Kansas City Club, at approximately 10:00 a.m. on Monday, August 13, 1990, to discuss a problem with some shrimp that had been served the previous Friday. At approximately 11:00 a.m. that same day, Holman was asked to return to Joyce's office where Rollin Meyers, personnel director of the Kansas City Club was also present. Joyce testified that he called Holman back to his office because he had received complaints about Holman's uncooperative attitude toward other department heads with regard to the inquiry into the shrimp problem.

During this second meeting of the day, Joyce told Holman that he had received complaints about Holman's attitude and that Holman's attitude "belonged at the back dock." Joyce explained that the back dock is the employees' entrance to the Club. Holman testified that in addition to telling him that his attitude belonged at the back dock, Joyce also told him to take his attitude and "hit the back door." Joyce and Meyers both denied that Holman was told to "hit the back door."

Holman testified that it was his understanding from his conversation with Joyce that he had been fired. Joyce and Meyers both denied that Holman was told that he was fired or terminated from his employment. Nonetheless, toward the end of their conversation, Holman stood up and asked Joyce if Joyce wanted him to leave and offered his keys to Joyce. Joyce told Holman that he had not asked him to leave. Nonetheless, Holman asked Meyers if he wanted the keys. Meyers told Holman that if he was leaving he should leave his keys, since in accordance with Club procedure he always left his keys at the Club when he was not in the building. Holman then left Joyce's office, proceeded out of the building and did not return to work. Holman did contact Meyers about his status, but there was conflicting testimony as to whether Holman sought to return to work after he left on August 13, 1990.

The Commission argues in its first two points on appeal that the circuit court erred in reversing the Commission's decision that Holman was discharged and finding instead that Holman voluntarily quit his employment. First, the Commission argues that said decision involves questions of fact which the court must accept consistent with the Commission's finding. Second, the Commission argues that the court erred by finding that Holman failed to meet his burden of proving his entitlement to benefits. These two points are interrelated and are taken together for discussion herein.

█ Although this cause is appealed from the circuit court, it is the decision of the Commission that is reviewed by an appellate court. *IXL Mfg. Co. v. Labor & Industrial Relations Comm'n*, 679 S.W.2d 903, 904 (Mo.App.1984). In reviewing an administrative decision, the court's inquiry is limited. The function of the reviewing court is to determine whether there is competent and substantial evidence on the whole record to support the Commission's decision and whether it is authorized by law. *Pulitzer Publishing Co. v. Labor & Industrial Relations Comm'n*, 596 S.W.2d 413, 417 (Mo. banc 1980) (citations omitted). Deference must be given to the Commission as the trier of facts, in its assessment of credibility. *Fruehauf Div., Fruehauf Corp. v. Armstrong*, 620 S.W.2d 67, 68

(Mo.App.1981). However, on questions of law a reviewing court is not bound by the Commission's findings. *Id.*

The Commission adopted as its opinion the findings of fact, conclusions of law, and decision of the appeals tribunal which held in part as follows:

It is apparent from a review of the testimony that there is a sharp conflict in the evidence presented by the parties. The Appeals Tribunal finds that the testimony of the claimant and the employer's general manager are of equal credibility. The Appeals Tribunal cannot make a judgment that the testimony of one is more persuasive than that of the other. It is further noted that there has been no further evidence presented to aid the Appeals Tribunal in discerning whether the testimony of one party is more reliable than that of the other. While such cases are rare, when faced with such a situation, the Appeals Tribunal has consistently found, in accordance with the declared public policy, that the Law shall be liberally construed to accomplish its purpose, that the claimant shall not be found to be disqualified for benefits. The Appeals Tribunal finds that under these circumstances, the claimant was discharged from his employment on August 13, 1990, when he understood that he was being told to 'hit the door.' * * * Accordingly, it is found that the claimant was discharged from his employment on August 13, 1990, but not for misconduct connected with his work.

The finding of the appeals tribunal as adopted by the Commission presents an unusual circumstance in that the Commission failed to resolve the credibility issues and make a finding of fact. Rather, the Commission held that since it could not resolve the credibility issues, Holman should prevail, as a matter of law.

Without citing the statute, the Commission references the public policy declaration of section 288.020, RSMo 1986, which states, in pertinent part, as follows:

1. As a guide to the interpretation and application of this law, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state resulting in a public calamity. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

2. This law shall be liberally construed to accomplish its purpose. . . .

The effect of the Commission's order is to say that when the testimony of the claimant and the employer as to a dispositive disputed fact is equally credible, public policy of the state requires that the claimant not be disqualified and benefits be granted. The Commission's decision misinterprets the law.

■ The general rule is that a claimant for unemployment benefits has the burden of proving eligibility for those benefits. *Mack v. Labor & Industrial Relations Comm'n,* 807 S.W.2d 688, 690 (Mo.App. 1991). However, when an employer claims that an employee was discharged for misconduct the burden of proving misconduct is on the employer. *Business Ctrs. v. Labor & Industrial Relations Comm'n,* 743 S.W.2d 588, 589 (Mo.App.1988).

■ In the case at bar, The Kansas City Club took the position that Holman voluntarily left his employment, without good cause, not that he was discharged for misconduct. Therefore, Holman carried the burden to show that he was eligible for benefits.

■ The Commission did not find that Holman met his burden of proof. Instead, the Commission found that it could not determine whose testimony was more credible and therefore relied on its perceived duty to rule in Holman's favor. The Commission's decision is contrary to the law. Upon a finding that a claimant failed to meet his burden of proof, the Commission

is obligated under the law to deny the claim.

The Commission's first two points are denied.

In its third point, the Commission argues that its decision was based on competent and substantial evidence in the record because, by inference from its findings and decision, the Commission found Holman's testimony to be credible.

The Commission's argument in this regard is contrary to its specific finding that the testimony of Holman and Joyce were found to be of equal credibility and persuasiveness. The Commission did not find Holman's testimony to be credible by inference or otherwise. As set forth above in this opinion, the Commission's decision was not based upon its evidentiary determinations. Rather, the Commission based its decision on a mistaken interpretation of the law in the circumstances where it was not able to determine whether Holman was terminated as he represented or whether Holman voluntarily quit as Joyce represented.

The judgment of the trial court is affirmed.

All concur.