

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| PATRICIA FAENGER, ADMINISTRATOR, and MISSOURI VETERANS HOME AT ST. JAMES, MISSOURI, | ) ) ) ) | |
| Appellants, | ) ) | WD77223 |
| v. | ) ) ) | OPINION FILED: September 9, 2014 |
| BOBBY PETTY, | ) ) ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Daniel R. Green, Judge**

**Before Division One:** Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick and Karen King Mitchell, Judges

The Missouri Veterans Home and Patricia Faenger (administrator for the Missouri Veterans Home—St. James) (collectively "MVH") appeal the circuit court's affirmance of the Administrative Hearing Commission's (AHC) order that Bobby Petty, a State of Missouri merit-system employee, be reinstated to her position as Nursing Assistant I. MVH argues that the AHC's order, finding that MVH failed to meet its burden of proving that there was cause for Petty's dismissal, was not supported by competent and substantial evidence and was against the overwhelming weight of the evidence. We affirm.

## Factual Background

MVH is a state-run nursing home facility for veterans, which is operated under the authority of the Missouri Veterans Commission; the home at issue in this appeal is located in St. James, Missouri. The facility is required to have a minimum number of employees at any given time in order to provide adequate supervision and care for the residents. If a scheduled employee is unable or fails to show up for a scheduled shift, and as a result, there are an insufficient number of employees, the facility (in the absence of volunteers) has to "mandate" a non-scheduled employee to work past his or her scheduled shift to cover the deficiency created by the absent employee.[1] Recognizing that the mandating process creates a hardship on employees, the facility would make every effort to avoid the process if possible by contacting volunteers first. The hardship created by the mandating process was often the subject of contention with the local union.

Because adequate staffing was a serious concern for the facility, MVH had in place Policy B-113, which provided, in part:

> All employees are expected to demonstrate regular attendance and use their leave responsibly. Employees who demonstrate patterns of tardiness in reporting for duty, patterns of absences, or absences from duty without authorization may be subject to disciplinary action, up to and including dismissal as outlined below.

The policy further indicated that it is the employee's responsibility to notify and discuss with their supervisor at the earliest possible moment any problems with their availability for work. The policy required employees to give notice of unavailability at least two hours before their scheduled shifts and provided that the failure to do so may result in disciplinary action, up to and

---

[1] The mandating process can also affect the facility's budget because it often results in overtime compensation for the mandated employees. With adequate staffing, the facility can minimize the overtime compensation by excusing previously mandated employees from their subsequently scheduled shifts. This is not a possibility if a scheduled employee simply fails to show up to work, resulting in an insufficient number of employees.

including dismissal. As to unauthorized absences, the policy provided that unauthorized absence may result in disciplinary action, up to and including dismissal. When employees failed to show up for their scheduled shifts or contact a supervisor to let them know that they would be unable to work, the response was often dismissal of the "no call no show" employee. When employees requested time off, however, they were generally granted their requests unless there was insufficient staff for the day requested.

Petty began working for the St. James facility on March 16, 2004, as a certified nursing assistant. On October 7, 2010, Petty was scheduled to work from 6:30 a.m. until 3:00 p.m. At 4:45 a.m. that morning, however, Petty called Jodi Stroot (the shift supervisor) to let her know that Petty's car would not start and, because Petty recently moved and her husband was out of town, she did not know anyone that could give her a ride to work. Petty claimed that she told Stroot that she would not be in to work at all that day. Stroot's notes, however, indicated that Petty advised that she would call around and try to either get help with her car or find a ride. Stroot claimed that she advised Petty to call back every couple of hours and update Stroot as to whether she would be able to work any part of her shift.[2] Though Policy B-113 did not expressly address this situation, there was a general expectation that, if an employee encountered trouble with a scheduled shift but was capable of showing up for any part of it, he or she would do so. According to Stroot's notes, Petty agreed to call back.[3]

---

[2] Stroot testified that she recalled her instruction that Petty call back because Stroot had recently encountered a similar situation where a different employee did not call back and was viewed as a no-call, no-show. But because Stroot had not made herself clear on that occasion, no disciplinary action was taken against the other employee. Stroot was thereafter advised, "from now on, to clarify that."

[3] Stroot's notes stated: "'My car won't start & I don't know who to call. I don't know anyone that lives out here. I will call around to find help or a ride. I don't know if I'm going to be late or even make it in at all. I will keep you posted & call back when I know more.' Clarified, Employee to call supervisor back. JS" (quoting Petty).

Petty was able to get her car fixed, and she picked it up from the repair shop around 11:00 a.m.[4] Petty later met up with a representative of the American Federation of State, County and Municipal Employees (AFSCME) union around the lunch hour at a McDonald's restaurant in St. James, which was located approximately two blocks from the MVH facility.

Around 11:40 a.m., Lisa Heidbreder, an employee at the St. James's veterans home, drove through the McDonald's drive-thru, saw Petty having lunch, and the two women waved at each other. Though Petty claimed that she had her two-year-old son with her, Heidbreder did not see any children. When she returned to work, Heidbreder casually mentioned to Shelly Blair (a scheduler) that she had seen Petty at lunch. Blair responded with surprise because she knew that Petty had called in with car problems, saying she could not make it to work, but was supposed to call back if she found transportation. Accordingly, Blair suggested that Heidbreder report the incident to Saultz, who suggested that they advise facility administrator Faenger. Heidbreder was asked to write a statement, indicating what she had seen.

Because Petty had not called back but was apparently able to obtain transportation during her regularly scheduled shift, she was considered to be a no-call, no-show, and she was dismissed.

Petty appealed her dismissal to the AHC, arguing, among other things, that her dismissal was not for the good of the service. The AHC held a consolidated hearing for Petty and two other former MVH employees that were also recently dismissed by Faenger: Threasa Bach and Velinda Kay Wofford.[5]

The AHC reinstated Petty to the position of Nursing Assistant I. The AHC specifically found that "Policy B-113 merely requires the employee to provide 'appropriate notification to

---

[4] Additionally, the service receipt indicates that Petty was charged $25.00 for a service call, which was provided at 9:15 a.m., and that she simply needed a new battery.

[5] All three women claimed that their dismissals were not for the good of the service.

4

the supervisor.' Petty did this when she called Stroot at 4:45 am, to inform her that she was unable to report for her 6:30 am shift due to car problems." The AHC noted the conflicting evidence between Stroot and Petty as to whether Petty was required to call back in later during the day, but then determined that "[b]ecause it is Faenger's burden, we find this conflicting testimony in favor of Petty." The AHC concluded that Faenger failed to prove that Petty violated Policy B-113. The AHC then concluded that "because we did not find cause to dismiss Petty . . . , we find the discussion of efficient administration and good of the service to be moot"; the order indicated that, accordingly, there were no factual findings on those issues.

MVH petitioned the circuit court of Cole County for judicial review of the AHC's decision. After receiving briefs from both parties, the circuit court denied MVH's request and sustained the AHC's decision, reinstating Petty. MVH appeals.

**Standard of Review**

"On an appeal from the trial court's review of an AHC decision, we review the decision of the AHC, not the judgment of the trial court." *Dep't of Soc. Servs. v. Peace of Mind Adult Day Care Ctr.*, 377 S.W.3d 631, 637 (Mo. App. W.D. 2012). "'The AHC's decision will be upheld unless it is not supported by competent and substantial evidence upon the whole record; it is arbitrary, capricious, or unreasonable; it is an abuse of discretion; or it is otherwise unauthorized by law or in violation of constitutional provisions.'" *Id.* (quoting *Beverly Enters.-Mo. Inc. v. Dep't of Soc. Servs.*, 349 S.W.3d 337, 351 (Mo. App. W.D. 2009)).

In determining whether a decision is supported by substantial competent evidence, we review the record as a whole and determine whether the AHC's decision is against the overwhelming weight of the evidence. *Id.* (citing *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003)). Though we do not view the AHC's factual findings in the

5

light most favorable to the decision, "we still must defer to its credibility findings, as the AHC is the sole judge of the credibility of witnesses and the weight and value to give to the evidence." *Id*. (internal quotations omitted). "We review the AHC's conclusions on the interpretation and application of the law[, however,] *de novo*." *Id*.

## Analysis

MVH raises a single point on appeal. MVH claims that the AHC's decision reinstating Petty was unsupported by competent and substantial evidence upon the whole record in that it failed to consider the overwhelming amount of evidence supporting Petty's dismissal. Because the AHC's decision was based upon a credibility determination to which we must defer, we affirm its decision.

"An appointing authority may dismiss for cause any employee in his division occupying a position subject hereto when he considers that such action is required in the interests of efficient administration and that the good of the service will be served thereby." § 36.380.[6] "'For cause' means legal cause." *Mo. Veterans Home v. Brown*, 374 S.W.3d 359, 365 (Mo. App. W.D. 2012). "It 'must be one which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public.'" *Id*. (quoting *Prenger v. Moody*, 845 S.W.2d 68, 77 (Mo. App. W.D. 1992)). "The burden of proof is on the employing agency to establish grounds for dismissal." *Mo. Veterans Comm'n v. Vanderhook*, 290 S.W.3d 115, 119 (Mo. App. W.D. 2009).

1 C.S.R. § 20-3.070(2) "sets forth a non-exhaustive list of circumstances that are sufficient to establish 'cause' for dismissal." *Brown*, 374 S.W.3d at 365. Among those circumstances are: a "complete[] absen[ce] from duty without prior or subsequent authorization

---

[6] All statutory references are to the Revised Statutes of Missouri 2000, as updated through the 2010 Cumulative Supplement, unless otherwise noted.

6

for that absence," 1 C.S.R. § 20-3.070(2)(F), and a "willful[] violat[ion of] the lawful regulations or policies of the agency" of which the employee is aware. *Id*. at § 20-3.070(2)(L).

In Petty's dismissal letter, MVH indicated that she was being dismissed because of an "unscheduled and unauthorized absence from duty." More specifically, the letter indicated that Petty's absence was in violation of Policy B-113 and B-257.[7]

It is undisputed that Petty called in to work on the day of her scheduled shift and advised that she was having car trouble. It is also undisputed that Petty did not show up at all for her scheduled shift. The dispute centered around whether Petty was required to call back and keep the facility updated as to whether she would be able to work any portion of her scheduled shift. Both parties agreed that, if Petty was not required to call back, she would not have been dismissed. Thus, the critical question before the AHC was whether Petty was aware of any policy requiring her to call back.

The AHC recognized the disputed factual issue and noted that "[b]ecause it is Faenger's burden, we find this conflicting testimony in favor of Petty."

Generally speaking, "[w]here there is a direct conflict in the testimony, the [AHC] must make a choice between the conflicting testimony." *Harrington v. Smarr*, 844 S.W.2d 16, 19 (Mo. App. W.D. 1992). Though the AHC failed to expressly resolve the credibility issue through a finding of fact, the only reasonable inference from the AHC's conclusion is that it found both Petty and Stroot to be equally credible as to the substance of the phone conversation when Petty called in to work that morning. "When the commission finds the parties to be equally credible . . . , it has, in effect, declared that the [burden-carrying party] did not satisfy [its] burden of proof." *Houcks v. Am. Food and Vending Enters., Inc.*, 247 S.W.3d 66, 68 (Mo.

---

[7] Policy B-257 merely authorized dismissal as a disciplinary measure in response to an unauthorized absence.

App. W.D. 2008); *see also Kansas City Club v. Labor and Indus. Relations Comm'n*, 840 S.W.2d 273, 275-76 (Mo. App. W.D. 1992) (when the commission finds the parties equally credible, it must resolve the issue in favor of the non-burden-carrying party); *Gamble v. Hoffman*, 695 S.W.2d 503, 507 (Mo. App. W.D. 1985) ("An administrative agency or board may weigh testimony and choose to believe or disbelieve all or part of it, but it may not set up a test or standard for credibility which requires the party not having the burden of proof to establish the incredibility of the witness for the party having the burden of proof."). By resolving the conflict here in favor of Petty, the AHC essentially stated its determination that MVH (the burden-carrying party on the issue of cause) failed to demonstrate that Stroot's version of events (though credible) was *more credible* than Petty's.

"[U]nder our standard of review, we are required to defer to the Commission's credibility determinations." *Scott v. Treasurer of State-Custodian of Second Injury Fund*, 417 S.W.3d 381, 389 n.7 (Mo. App. W.D. 2014). "Thus, even if this Court would have assessed credibility differently" in light of the facts that Stroot's notes were written contemporaneously with Petty's phone call, that Stroot apparently had no motive to falsify her notes, that Petty's "violation" did not become apparent until well after Stroot wrote her notes, and that Petty had motive to falsify her testimony, "we must defer to the Commission's assessment that [Petty's] testimony was credible." *Id*.

In any event, we find Petty's situation similar to that of the employee in *Henry v. Missouri Department of Mental Health*, 351 S.W.3d 707 (Mo. App. W.D. 2011). In *Henry*, the employee was dismissed for allegedly violating departmental policy when she held a client's head during a restraint. *Id*. at 713-14. To meet its burden of proof, the department introduced its written policy that required employees to use "only approved principles and techniques

8

consistent with PRO ACT for physical or mechanical restraints." *Id*. at 714. "[T]he written PRO ACT material submitted at the administrative hearing[, however,] d[id] not prohibit holding a client's head during a restraint." *Id*. Rather, the prohibition on head holding came from an oral admonition provided by a PRO ACT instructor during a training session. *Id*. at 713-14. On appeal from the employee's reinstatement, this court rejected the department's argument that the oral admonition sufficed to prove that head holding constituted a violation of its policies and regulations. *Id*. at 714. This court noted: "If the hospital's management wanted to prohibit some methods of restraining the head, it should have done so in a written policy or in written PRO ACT materials that stated what conduct was permitted or should be prohibited." *Id*.

Here, Policy B-113 requires no more of an employee than to call a supervisor when the employee discovers that he or she will be unable to report for a scheduled shift.[8] Though, like the oral admonition in *Henry*, there was apparently an unwritten understanding that situations like Petty's necessitated continuous updates throughout the employee's scheduled shift, Stroot admitted that on at least one prior occasion, an employee was not aware of this requirement and, consequently, was not dismissed for failing to call back. If an employee is required to continually update the facility of his or her availability throughout the duration of a scheduled shift, lest the employee be deemed a no-call, no-show, the facility should include this information in its written policy describing the attendance requirements (Policy B-113). Thus, MVH did not establish by substantial and competent evidence that continuous callbacks were required by its policies and regulations.

---

[8] Though the policy requires the employee to call in at least two hours prior to a scheduled shift, MVH witnesses acknowledged that, had Petty's 15-minute tardiness in calling in been the only violation, she would have received merely a corrective action, rather than dismissal.

Because MVH failed to prove that continuous callbacks were required by its attendance policy and because the AHC found Petty's testimony that she advised the facility she would not be available to work at all that day to be credible, we must affirm.

MVH's point on appeal is denied.

## Conclusion

Because the AHC's decision was supported by competent and substantial evidence on the whole record, we affirm.

_____<br>
Karen King Mitchell, Judge

Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick, Judge, concur.