**Quinzell WOODEN, Appellant,**

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

**No. WD 74308.**

Missouri Court of Appeals, Western District.

April 17, 2012.

Michael R. Rinard II, St. Joseph, MO, for Appellant.

Ninion S. Riley, Jefferson City, MO, for Respondent.

Before Division II: GARY D. WITT, Presiding Judge, and JOSEPH M. ELLIS and MARK D. PFEIFFER, Judges.

MARK D. PFEIFFER, Judge.

Quinzell Wooden ("Wooden") appeals the order of the Labor and Industrial Relations Commission ("Commission") finding that he was disqualified from receiving unemployment benefits because he was fired from his job at The Summit, Inc. ("Summit"), due to misconduct connected with his work. We reverse and remand to the Commission with instructions to award Wooden unemployment benefits at a rate commensurate with Wooden's wage history with Summit prior to termination.

## Factual and Procedural Background

Preliminarily, we note that the factual history of this case is well documented in our previous opinion involving these parties, *Wooden v. Division of Employment Security*, 341 S.W.3d 770, 771–73 (Mo.App. W.D.2011), and we will not repeat those facts here. Suffice it to say that Wooden violated a work rule in failing to pick up trash at Summit first thing in the morning upon Wooden's arrival at work. However, we remanded the case to the Commission directing the Commission to provide factual findings resolving the question of whether Wooden's violation of a work rule was "culpable or intentional behavior, or whether it was simply an act of negligence,

poor workmanship, or lack of judgment." *Id.* at 774.

Upon remand, the pertinent factual findings of the Commission were as follows:

[T]he most credible evidence shows that claimant knew he was supposed to pick up outside trash first thing in the morning. At the latest, he knew this was to be completed before his supervisor arrived at 8:00 a.m. He did not do so on January 25, 2010. There were no emergency circumstances that prevented him from completing this task on that date.

The Commission concluded that Wooden's employment rule violation on January 25, 2010, constituted misconduct connected with work and, therefore, concluded that Wooden was disqualified from receiving unemployment benefits.

Wooden appeals.

## Standard of Review

■ Appellate review of the Commission's decision in an unemployment compensation case is governed by section 288.210.[1] *Stanton v. Div. of Emp't Sec.*, 321 S.W.3d 486, 488 (Mo.App. W.D.2010). On appeal, we may modify, reverse, remand for rehearing, or set aside the decision of the Commission on the following grounds only:

(1) the Commission acted without or in excess of its power;

(2) the award was procured by fraud;

(3) the facts found by the Commission do not support the award; or

(4) there was not sufficient, competent evidence in the record to warrant the making of the award.

§ 288.210; *see also Stanton*, 321 S.W.3d at 488. "The findings of the Commission as to facts, if supported by competent and

---

1. All statutory citations are to RSMo 2000 unless otherwise noted.

substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law." § 288.210. "While the appellate court gives deference to the Commission's findings of fact, the court is not bound by the Commission's conclusions of law or the Commission's application of law to the facts." *Timberson v. Div. of Emp't Sec.*, 333 S.W.3d 30, 32 (Mo.App. W.D.2010).

■ Most importantly, while "we defer to the factual findings of the Commission if supported by competent and substantial evidence, the issue of whether an employee's actions constitute misconduct associated with the employee's work is a question of law." *Peoples v. ESI Mail Pharmacy Serv., Inc.*, 213 S.W.3d 710, 711 (Mo.App. E.D.2007). And where the appeal involves a question of law, no deference is given to the Commission. *Id.* (citing *Dixon v. Div. of Emp't Sec.*, 106 S.W.3d 536, 540 (Mo.App. W.D.2003)). But even though misconduct is reviewed *de novo*, this court will "defer to the Commission on determinations regarding the evidence and the credibility of witnesses." *Rush v. Kimco Corp.*, 338 S.W.3d 407, 410 (Mo.App. W.D.2011).

## Analysis

In his sole point on appeal, Wooden argues the Commission erred in disqualifying him from benefits because there was no substantial or competent evidence to support a finding that Wooden's actions constituted misconduct associated with his work. We agree.

■ An employee who is fired due to misconduct connected with his work is "disqualified for waiting week credit and benefits, and no benefits shall be paid nor shall the cost of any benefits be charged against any employer for any period of employment within the base period until the claimant has earned wages for work insured under the unemployment laws of this state." § 288.050.2, RSMo Cum.Supp. 2009. However, disqualifying provisions in Missouri's unemployment laws are to be "strictly construed against the disallowance of benefits to unemployed but available workers." *Walker v. Div. of Emp't Sec.*, 333 S.W.3d 517, 520 (Mo.App. W.D. 2011) (internal quotation omitted).

■ Misconduct is (1) "an act of wanton or willful disregard of the employer's interest," (2) "a deliberate violation of the employer's rules," (3) "a disregard of standards of behavior which the employer has the right to expect of his or her employee," or (4) "negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." § 288.030.1(23), RSMo Cum.Supp.2009. All four types of misconduct require a culpable intent on the part of the employee. *Bostic v. Spherion Atl. Workforce*, 216 S.W.3d 723, 725 (Mo.App. W.D.2007).

■ While a claimant generally bears the burden of demonstrating entitlement to unemployment benefits, "when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove misconduct connected to work." *Rush*, 338 S.W.3d at 411 (citing *Miller v. Kansas City Station Corp.*, 996 S.W.2d 120, 124 (Mo.App. W.D. 1999)). To satisfy section 288.030.1(23), the employer must present evidence that the employee deliberately or purposefully erred. *Duncan v. Accent Mktg., LLC*, 328 S.W.3d 488, 492 (Mo.App. E.D.2010). The employer must show the claimant's misconduct by a preponderance of the evidence. *Rush*, 338 S.W.3d at 411 (citing *Ahern v. Lewis Café, Inc.*, 308 S.W.3d 294, 297 (Mo.App. E.D.2010)). A preponderance of the evidence is evidence "which as

a whole shows the fact to be proved to be more probable than not." *Spencer v. Zobrist*, 323 S.W.3d 391, 399 (Mo.App. W.D. 2010) (internal quotation omitted).

The Commission found that "the most credible evidence shows that claimant knew he was supposed to pick up outside trash first thing in the morning." [2] Credibility of witnesses and determinations regarding the evidence fall within the discretionary sphere of the Commission. *See Rush*, 338 S.W.3d at 410. Because this court defers to the Commission's credibility determinations, and the Commission determined that the credible evidence showed that Wooden knew his employer required him to pick up trash upon arrival or at least by 8:00 a.m., this court is bound by the finding that Wooden knew of the rule and that Wooden violated that rule. *See* § 288.210; *Nickless v. St. Gobain Containers, Inc.*, 350 S.W.3d 871, 874 (Mo.App. E.D.2011) (noting that when an issue comes down to a "he said/she said" contest, the Commission's finding that one witness's account is more credible is binding on the appellate court).

The violation of a work rule, such as the rule that Wooden pick up trash upon arrival at work, can constitute misconduct. *Rush*, 338 S.W.3d at 411. "However, there is a 'vast distinction' between a violation of an employer rule that would merely justify termination and a violation of an employer rule that would justify termination *and* a denial of unemployment benefits under the 'misconduct connected with the claimant's work' standard set by section 288.050.2." *Id.* In other words, "violation of a reasonable work rule is not dispositive proof of misconduct connected with work." *Id.*

"[I]n order for misconduct to be found, there must be a finding of some intent on the part of the discharged employee or repeated negligent acts amounting to culpable conduct." *Harris v. Div. of Emp't Sec.*, 350 S.W.3d 35, 42 (Mo.App. W.D.2011) (internal quotation omitted). The employer bears the burden of proving the employee committed a culpable act of misconduct. *Bostic*, 216 S.W.3d at 725. To meet this burden, the employer must "demonstrate a violation of a work rule of significant import to constitute misconduct and thus support the denial of unemployment benefits." *Rush*, 338 S.W.3d at 411. The employer must also show that the worker deliberately violated the employer's rules [3] or was culpably negligent [4] in doing so and that the worker's actions were not simply the result of poor workmanship, lack of judgment, or an inability to do the job. *Id.*; § 288.030.1(23) RSMo Cum.Supp.2009.

This court has consistently held that there is no misconduct to justify a denial of unemployment benefits when the employee's violation of a rule is a result of poor workmanship or a lack of judgment. *See Hoover v. Cmty. Blood Ctr.*, 153 S.W.3d 9, 13 (Mo.App. W.D.2005). In *Hoover*, a Community Blood Center employee "failed to properly place unit number labels on

---

**2.** It is undisputed that Wooden's work shift at Summit began at 7:00 a.m.

**3.** A "deliberate" violation is one that is "[i]ntentional; premeditated; fully considered." BLACK'S LAW DICTIONARY 492 (9th ed.2009).

**4.** "Simple" or "mere" negligence does not constitute misconduct pursuant to section 288.030.1(23). *See Rush v. Kimco Corp.*, 338 S.W.3d 407, 411–12 (Mo.App. W.D.2011);

*Bostic v. Spherion Atl. Workforce*, 216 S.W.3d 723, 725 (Mo.App. W.D.2007). Instead, the magnitude, degree, or recurrent nature of the negligence must rise to the level of demonstrating the worker's "wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." § 288.030.1(23) RSMo Cum.Supp. 2009.

collection bags on two or three occasions and had failed to notice problems with donor history forms on two or three occasions" and made upsetting comments to a blood donor about the donor's upcoming surgery. *Id.* Hoover had previously been "counseled" about her labeling errors and placed under supervision. *Id.* at 10. A Division deputy found that Hoover was disqualified from unemployment benefits for five weeks because she had been fired due to misconduct connected with work. Hoover appealed to the Division's Appeals Tribunal, which affirmed the deputy's decision. The Commission also affirmed Hoover's disqualification due to misconduct. This court, reviewing the question of misconduct *de novo*, noted that "the Community Blood Center has never alleged, let alone proven, that Appellant willfully committed [the labeling and donor form] errors. Nothing in the record indicates that these errors were anything more than negligent omissions on the part of the Appellant." *Id.* at 14. While Hoover's errors were "acts of negligence and/or poor workmanship and are reasonable grounds for firing Appellant, poor workmanship and mere negligence do not rise to the level of misconduct for purposes of unemployment compensation law." *Id.* (internal quotation omitted).

To be sure, "[a]bsent evidence that Appellant deliberately or purposefully committed these errors, [he] cannot properly be found to have committed an act of misconduct." *Id.* Thus, it was Summit's burden to show that, instead of simply forgetting to pick up the trash or exercising poor judgment on January 25, 2010, Wooden's behavior was culpable or intentional. Simply put, the Commission has made no such factual finding, even though this court expressly remanded this case to the Commission to resolve that factual inquiry. We believe the reason is that there simply is no evidence in the record that Wooden's supervisors ever alleged or attempted to prove that Wooden willfully refused or culpably failed to pick up trash upon his arrival at work on January 25, 2010. Instead, as in *Hoover*, Wooden's supervisors testified that Wooden knew about the trash pick-up rule and had been counseled once previously about the rule, but never argued that Wooden's violation of the rule on January 25 was deliberate or culpably negligent instead of an incident of poor judgment.

Summit did not argue that Wooden engaged in recurrent acts of rule-breaking,[5] negligently violated a rule of such magnitude or degree that Wooden's conduct manifested "culpability" or "wrongful intent" or "evil design" or constituted an "intentional and substantial disregard" of Summit's interest or Wooden's work duties,[6] nor did Summit argue that Wooden deliberately chose to violate or disregard its rule.[7] More importantly, the

---

**5.** "Recurrent" is defined as "happening time after time." *See* Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/recurrent. The only incidents of Wooden not picking up the trash on time, according to the record, were (1) in December 2009, when Wooden's supervisors counseled Wooden on the rule, and (2) on January 25, 2010, when Wooden was fired for his failure to timely pick up the trash that day. This is hardly an example of "recurrent" conduct. Hence, as we have noted, this factual scenario is much more akin to the conduct described in *Hoover*, 153 S.W.3d at 10–14, as compared to the worker's recurrent conduct described in

*White v. Division of Employment Security*, 217 S.W.3d 382, 392 (Mo.App. W.D.2007).

**6.** *See Wright v. Casey's Mktg. Co.*, 326 S.W.3d 884, 887–90 (Mo.App. W.D.2010).

**7.** This is not a case where an employee chose to falsify time cards, *Mathews v. B & K Foods, Inc.*, 332 S.W.3d 273, 274 (Mo.App. S.D. 2011); or one where an employee intentionally refused to call in to work before being absent, *Hagler v. True Mfg. Co.*, 353 S.W.3d 53, 57–59 (Mo.App. E.D.2011); or a case where an employee chose to ignore a contem-

Commission did not document any factual findings to support a suggestion that Wooden's conduct rises to the level of deliberate or culpable conduct. If anything, the Commission's factual findings suggest that Wooden showed a lack of judgment in failing to pick up the trash immediately upon his arrival at work when he knew that was the rule. While such conduct may justify Wooden's termination, it does not rise to the level of misconduct so as to disqualify him from receiving unemployment benefits.

Because the evidence does not support a finding that Summit met its burden of establishing that Wooden acted with a deliberate or otherwise culpable manner in disregarding or failing to follow an employment rule, his conduct in violating the rule does not rise to the level of misconduct associated with his employment.

### Conclusion

Because the facts as itemized by the Commission fail to demonstrate misconduct on the part of Wooden, the Commission's order is reversed and remanded with instructions to the Commission to award unemployment benefits to Wooden at the commensurate rate dictated by Wooden's wage history prior to his termination of employment by Summit.

GARY D. WITT, Presiding Judge, and JOSEPH M. ELLIS, Judge, concur.

poraneous order from a superior, *Dixon v. Stoam Indus., Inc.,* 216 S.W.3d 688, 692 (Mo. App.W.D.2007). That type of intentional action goes "beyond a mere lack of judgment" and constitutes misconduct. *Mathews,* 332 S.W.3d at 278. Here, there is no similar evidence reflecting that Wooden deliberately set out to refuse to pick up trash at 7:00 a.m. on January 25, 2010.