**MODIFIED 4/28/2015**



# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| ROSE SPEED, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | WD77350 |
| | ) | |
| DIVISION OF EMPLOYMENT SECURITY, | ) | Opinion filed:  March 24, 2015 |
| | ) | |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION**

Before DivisionThree:  Victor C. Howard, Presiding Judge,
James E. Welsh, Judge and Gary D. Witt, Judge

Rose Speed was a full-time care assistant at Children's Mercy Hospital (hereinafter "CMH") for approximately six years until December 2011, at which time she was discharged for violating CMH's Service Excellence Policy.  Ms. Speed then applied for unemployment compensation benefits.  The Labor and Industrial Relations Commission (hereinafter "Commission") denied Ms. Speed's claim, finding that she had been discharged for misconduct. Ms. Speed appeals.  The decision of the Commission is affirmed.

**Factual Background**

Ms. Speed worked as a full-time care assistant at CMH for approximately six years.  At her hiring she was made aware of CMH's Service Excellence Policy, and the policy was

routinely addressed in department meetings and through occasional required trainings at the hospital. The policy includes the following language:

> **Respect**- We respect our patients, families and one another with dignity, compassion and courtesy. We honor individuality and diversity. We acknowledge the vulnerability of our community's children by extending the highest quality of care to all those we serve.
>
> . . . .
>
> It is the responsibility of each team member . . . to demonstrate the behavioral expectations which engender care, service and respect in every interaction.
>
> . . . .
>
> Respect
> 1. Demonstrate respect in every interaction
> . . . .
> 3. Demonstrate positive intent through your behavior.

Ms. Speed was in school during at last part of her employment with CMH, and was a part of CMH's weekend option policy, which allowed care assistants attending school to work on weekends in order to attend school during the week. Ms. Speed was removed from the program in November of 2011, because she was not meeting the requirements of the policy.

In December of 2011, Ms. Speed was discharged for violating CMH's Service Excellence Policy. Prior to her discharge, Ms. Fucik, CMH's Director of Patient Care Resources, conducted an investigation into the incident that led to Ms. Speed's discharge and documented her inquiries and findings.

On December 19, 2011, Ms. Speed filed for unemployment benefits, and CMH appealed. A deputy for the Division of Employment Security (hereinafter "Division") determined that Ms. Speed was disqualified from receiving benefits because she was discharged for misconduct connected with work. Ms. Speed appealed, and a hearing was to be held March 7, 2012, but Ms. Speed did not call into the hearing at the correct time, and the Appeals Tribunal of the Division

2

dismissed the appeal. Upon Ms. Speed's request for reconsideration, the Appeals Tribunal reset the matter to determine if Ms. Speed had good cause for failing to appear at the March 7 hearing, and subsequently held that she failed to show she had good cause and dismissed the appeal. Ms. Speed appealed to the Commission, which affirmed the decision of the Appeals Tribunal. Ms. Speed appealed the decision to this Court, where the Commission's decision was reversed and remanded to be heard on the merits. *Speed v. Div. of Emp't Sec.*, 402 S.W.3d 153 (Mo. App. W.D. 2013).

A hearing on the merits of Ms. Speed's claim for unemployment benefits was held on October 3, 2013. The appeals referee stated at the beginning of the hearing that she was required to receive the appeals packet into the record, of which each party had a copy, and told the parties they had the opportunity to object to the admission of the packet if they had any objections. She described the appeals packet page by page and it was entered as Division's Exhibit 1. The exhibit included an "employee policy acknowledgement[,]" an "employee counseling report[,]" a "signature page[,]" a "termination document[,]" which was prepared by Ms. Fucik and documented her investigation of the alleged complaint against Ms. Speed that led to her termination, and an "administrative policy." After going through the exhibit, the appeals referee said, "Again, I am required to receive the packet into the record, but before I do, Ms. Speed, do you have any objections to its admission?" to which Ms. Speed expressly answered, "[N]o, ma'am." During the hearing, CMH put on testimony from Lonna Anderson, a full-time manager or supervisor for CMH, and Ms. Fucik, and Ms. Fucik also referred to Division's Exhibit 1 at times, and Ms. Speed testified on her own behalf.

The Appeals Tribunal found that a patient's mother reported to a charge nurse and later the director that Ms. Speed was telling the mother her personal business as it pertained to work,

3

specifically, that she said to her "You cannot trust the mother-f***ing white people that work here! They discriminate against black people." The mother said she tried to overlook the comment but that Ms. Speed later continued explaining that she was dealing with discrimination, and that a white woman there took her off work on the weekends knowing she was in school and referring to the people with whom she was upset as "b****es." The mother then said to Ms. Speed that she was there because her child was sick and she really did not want to hear Ms. Speed's personal business.

The Appeals Tribunal further found that when the patient's mother reported the incident with Ms. Speed, she gave the charge nurse Ms. Speed's name, job title, and physical description. Further, according to Ms. Fucik's investigation, Ms. Speed was in fact removed from the weekend option and likely learned of her removal the day of the complaint. Ms. Fucik also testified that there was an incident reported to a different director where Ms. Speed was overheard on the unit saying loudly that her "[prejudiced] white instructor was going to flunk her out of school." The Appeals Tribunal specifically found that Ms. Speed's testimony was not credible because it materially differed from the facts as discussed above, because the complaining mother was able to provide CMH with detailed information about Ms. Speed and her work situation, and because the patient's mother had no motivation to mislead CMH about the events.

The Commission adopted the Appeals Tribunal's decision. In its adoption of the Tribunal's decision and credibility determinations, the Commission noted its recognition that "all of the allegations against [Ms. Speed] are based on hearsay as the actual witnesses to the alleged comments did not testify for themselves at the hearing." The Commission also expressed that

4

"an employer will almost never be able to present firsthand testimony" in the given circumstances. Ms. Speed appeals.

**Standard of Review**

Section 288.210 specifies that, in reviewing the decision of the Commission,

[t]he findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
(1) That the commission acted without or in excess of its powers;
(2) That the decision was procured by fraud;
(3) That the facts found by the commission do not support the award; or
(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

While we substantially defer to the Commission's determination on disputed factual issues, we do not defer to its conclusions of law or application of the law to the facts. *Evans v. Div. Emp't Sec.*, 354 S.W.3d 220, 223 (Mo. App. W.D. 2011) (quoting *Schilb v. Duke Mfg. Co.*, 338 S.W.3d 392, 395 (Mo. App. W.D. 2011)). Specifically, whether the Commission's factual findings support a finding of misconduct is a legal issue, which we review de novo. *Id.* at 223-24.

**Analysis**

Ms. Speed's sole point on appeal contends that the Commission's finding of misconduct was not supported by competent and substantial evidence. She specifically argues that CMH "did not present any written documentation other than the verbal comments that the mother of the patient allegedly made to [Ms.] Fucik" and that "[t]here w[ere] no witnesses to the incident[,] thus the comments without any other evidence [were] [h]earsay." Ms. Speed cites *Hill v. Norton & Young, Inc.*, 305 S.W.3d 491 (Mo. App. E.D. 2010), to support her position that because (1) CMH's only evidence that she was discharged for misconduct connected with work was hearsay

5

and (2) she was unrepresented and made statements at the hearing from which an objection could be inferred, CMH failed to meet its burden to show by a preponderance of the evidence that she was discharged due to misconduct connected with work. Rather than address Ms. Speed's argument, the Division's briefing focuses on what constitutes misconduct and argues that the findings of the Commission meet those requirements.

Pursuant to section 288.050.2, a claimant is disqualified from receiving unemployment benefits "[i]f a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work." Misconduct is defined as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

§ 288.030.1(23).

Generally, it is the claimant's burden to show that he or she is entitled to unemployment benefits. *Wooden v. Div. of Emp't Sec.*, 364 S.W.3d 750, 753 (Mo. App. W.D. 2012). However, when the employer asserts that the claimant was discharged for misconduct connected with work, the burden moves to the employer to prove such misconduct. *Id*.

The conduct of unemployment hearings and the use of hearsay in those proceedings is governed by the Missouri Code of State Regulations, which provides:

> The hearing need not be conducted according to the common law or statutory rules of evidence or the technical rules of procedure. Hearsay evidence is generally admissible. Evidence is admissible if it is not irrelevant, immaterial, privileged or unduly repetitious. Hearsay which is timely objected to shall not constitute competent evidence which, by itself, will support a finding of fact. A party or his/her attorney may advise the hearing officer of a defect in the character of any evidence introduced by voicing an objection. The hearing officer shall rule on the admissibility of all evidence. Any evidence received without objection

6

which has probative value shall be considered by the hearing officer along with other evidence in the case.

*Hill v. Norton & Young, Inc.*, 305 S.W.3d 491, 494 (Mo. App. E.D. 2010) (quoting 8 CSR 10–5.015(10)(B).4).

At the hearing, Ms. Speed testified that when she was told about the patient's mother's complaint, she was dumbfounded and did not know what Ms. Fucik was talking about "because [she] didn't say anything to anybody" and she told Ms. Fucik that she didn't do it. Regarding the weekend program, Ms. Speed testified that she was not upset about being taken out of the program and did not make any racial comments to other employees about her instructor in that program nor use any profanity in reference to the instructor of the program. Further, Ms. Speed denied making a comment to a patient's mother about her feelings regarding the weekend program, and also denied using profanity or any negative racial statements when talking to a patient's mother.

Despite Ms. Speed's testimony denying the conduct for which CMH discharged her, her argument that she effectively objected to the Division's evidence showing she was discharged for work-related misconduct and that no competent and substantial evidence supported the Commission's finding that she was discharged for such misconduct is without merit.

Ms. Speed relies on decisions from our sister districts holding that, where a claimant is not represented by counsel at the administrative hearing, the claimant may make statements that, while they are not classic objections, do not amount to a waiver of the claimant's right to competent and substantial evidence. *Bridges v. Mo. Southern State Univ.*, 362 S.W.3d 436, 442 (Mo. App. S.D. 2012) (noting the objections and inferred objections in precedent, specifically that in *Jenkins v. George Gipson Enters., LLC*, claimant's denial of the operative facts implied an objection, 326 S.W.3d 839, 843 (Mo. App. E.D. 2010); in *Hill*, claimant made statements from

7

which an objection could be inferred, 305 S.W.3d at 494; and in *Helfrich v. Labor and Indus. Relations Comm'n, Div. of Emp't Sec.*, claimant said "he's lying," 6 S.W.2d 663, 666 (Mo. App. E.D. 1988)).  We need not comment on the soundness of these cases because we find them inapplicable due to Ms. Speed's affirmative statements.

In this case Ms. Speed affirmatively stated she had no objection to the hearsay evidence. After introducing and discussing page by page the exhibit, the appeals referee specifically asked Ms. Speed, whether she had any objections to its admission, to which Ms. Speed expressly answered, "[N]o, ma'am."  "The affirmative representation that a party has 'no objection' to evidence or instructions waives all review, including plain-error review." *Atkinson v. Corson*, 289 S.W.3d 269, 277 n. 6 (Mo. App. W.D. 2009).

Specifically, Ms. Fucik testified that she heard from an assistant department director of a November 17, 2011, complaint regarding Ms. Speed from the mother of a CMH patient and decided to investigate the complaint.  The assistant department director provided Ms. Fucik the contact information from the complaining mother, and Ms. Fucik spoke to her.  The patient's mother reported that

> she was approached on two separate occasions by [Ms. Speed] and she was discussing her problems with her.  She stated that you can't trust mother f***ing white people that work here, they discriminate against black people. . . . [Ms. Speed] said that she was dealing with discrimination with a white woman that took her off weekends and that those b****es kn[e]w that [she was] in school.

The patient's mother said she "blew it off the first time that she was talking to her about these things but did speak up on the second time and said that [she was] there to make sure [her] daughter gets good care."  The mother told Ms. Speed "I don't even know you and you're telling me your business," and Ms. Speed "started in again" and the mother told her "that's not why I'm

8

here." The mother told Ms. Fucik that she felt that Ms. Speed was "way out of line in representing the hospital in that manner."

Ms. Fucik further testified that when she spoke to Ms. Speed about the complaint, Ms. Speed denied that she would say such things and that she did not know why the mother or the nurse reporting the initial complaint would say those things about her, and that maybe the mother was outside and overheard her friend, who also worked at CMH and "uses that kind of language and thinks that everyone is discriminating against her," talking about the weekend option and how it would affect her schooling. Ms. Fucik told Ms. Speed that the mother specifically said it was Ms. Speed that said those things, and Ms. Speed maintained that she did not talk that way and would never talk about those types of things with parents.

Ms. Fucik testified that she told Ms. Speed in a meeting on December 12 that based on her review of the documentation, because it was a violation of the Service Excellence Policy to use profane language toward CMH patients' families and unacceptable to engage in the kind of discussion she did with CMH visitors, she had decided to terminate Ms. Speed's employment.

## Conclusion

Ms. Speed specifically expressed that she had no objection to Division's Exhibit 1 when the appeals referee asked explicitly whether she did. Ms. Fucik's testimony largely mirrored the investigation notes contained within the termination document in Division's Exhibit 1. The Commission found the version of events as related in Ms. Fucik's testimony and the documentation to be credible, and this Court defers to that determination of credibility. *Lucido v. Div. of Emp't Sec.*, 441 S.W.3d 172, 174 (Mo. App. W.D. 2014). Ms. Speed does not argue that the conduct for which CMH asserted that she was discharged, taken as true, would not constitute

9

misconduct sufficient to disqualify her from unemployment benefits under section 288.050.2, and this Court does not so find.

The Order of Commission Affirming Appeals Tribunal denying Ms. Speed unemployment compensation benefits because she was discharged by CMH for misconduct connected with her work is affirmed.


_____

VICTOR C. HOWARD, JUDGE

All concur.