

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| PAMELA COOK, | ) | No. ED102652 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ACCORD BUILDING SERVICES, LLC, | ) | Appeal from the Labor and Industrial |
| | ) | Relations Commission |
| | ) | 13-22936 & 13-22938 R-A |
| and | ) | |
| | ) | |
| DIVISION OF EMPLOYMENT SECURITY, | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | FILED:  February 16, 2016 |

### OPINION

Pamela Cook (Claimant) appeals from the decisions of the Labor and Industrial Relations Commission (Commission) denying Claimant unemployment benefits and declaring an overpayment of benefits already received.  We reverse.

### Factual and Procedural Background

We note this case has a lengthy and complicated procedural history.   The relevant facts are as follows:  In February 2011, Claimant began working, on average thirty hours per week and earning nine dollars per hour without benefits, for Accord Building Services, LLC (Employer) in housekeeping for clients of Employer.

On June 3, 2013, Claimant arrived at Bass Pro, the location where she had been working

at exclusively for more than two years. Upon arriving at work, a Bass Pro representative informed her that she should call the office of Employer because she was no longer assigned to work at Bass Pro. After contacting Employer, a representative from Employer's management informed Claimant that her Bass Pro job had indeed ended and that she was not going to be part of the new crew. June 3, 2013, was the last day Claimant performed services for Employer.

On June 5, 2013, Claimant filed her initial claim for unemployment compensation benefits. On June 14, 2013, Employer Services Company (ESC) sent a letter on behalf of Employer to the Division of Employment Security (Division) protesting Claimant's unemployment claim alleging she refused available work at two separate locations that Employer offered her on June 6, 2013, after she was "taken off" and "removed" from Bass Pro on June 3, 2013. [1] The letter also stated that as of June 4, 2013, Claimant "is still employed by our employer and has refused available work."

On July 8, 2013, a Deputy of the Division determined that Claimant was "not disqualified because of the refusal of work on June 6, 2013" at the Forsyth location, and that "the refusal was with good cause or the work offered was not suitable" because "she believed it was a split shift position" (Issue 302).

On July 29, 2013, a Deputy of the Division determined that Claimant was "not disqualified because of the refusal of work on June 6, 2013," at the Fenton location, and "the refusal was with good cause or the work offered was not suitable" because "the work was too far from her home" (Issue 301). Employer appealed these determinations.

On August 23, 2013, the Appeals Tribunal held a telephone hearing on Issue 302 and Issue 301, to determine whether Claimant refused an offer of suitable work from Employer. On

---

[1] During the hearing on Claimant's claim for unemployment benefits, held on December 26, 2013, Claimant testified regarding offers made to her to work at other sites. Claimant testified that she never accepted the jobs at those other sites.

August 28, 2013, the Appeals Tribunal issued separate decisions on each appeal.

On Issue 302, the Appeals Tribunal found that Employer "removed the claimant" from the client where she was working for over two years on June 4, 2013, and immediately offered Claimant a different position working at a school on Forsyth. The Appeals Tribunal further found that Claimant declined that offer on June 6, 2013, and has not worked for the Employer "since that time." Since the Employer offered Claimant a new position immediately after removing Claimant from her prior position, the Appeals Tribunal found there was no separation from employment prior to Employer offering Claimant the new position. It further found there was no "former employer" because there was no separation. The Appeals Tribunal affirmed the Deputy's determination that Claimant is not disqualified for benefits because "the claimant did not fail without good cause on June 6, 2013, to accept suitable work when offered by a former employer." The Appeals Tribunal remanded the issues of Claimant's separation from Employer and her availability for work back to the Deputy.

On Issue 301, the Appeals Tribunal also found that Employer "removed the claimant" from the client where she was working for over two years on June 4, 2013. There was a dispute as to whether the employer offered a position in Fenton to Claimant right after "removing" her from her prior position. Claimant did admit that the Fenton location was offered at some prior point and that she would not work at that location because it was too far of a drive. The Appeals Tribunal concluded that Employer "did not show by competent evidence that the Fenton position was offered to the claimant at that time." The Appeals Tribunal again affirmed the Deputy's determination that Claimant is not disqualified for benefits because "the claimant did not fail without good cause on June 6, 2013, to accept suitable work when offered by a former employer." The Appeals Tribunal also remanded the issues of Claimant's separation from

3

Employer and her availability for work back to the Deputy to determine what happened at the time of separation.

On September 11, 2013, the Division mailed Claimant an "Employment Separation Information Request: "Pending Issue" Questionnaire – QUIT" (Issue 304). The questions related to whether Claimant worked for Employer after September 3, 2013 and requested details about why she quit. Claimant responded that she was laid off on June 4, 2013 and repeatedly responded that she did not quit and that she did not work for a temporary agency. Claimant also responded that she "asked [Employer] if any other positions were available and on Aug. 26, 2013 was told [by Employer] none available. They wanted their uniform and badge back. I did not quit." On October 4, 2013, the Deputy determined that Claimant left work with Employer voluntarily without good cause attributable to her work or employer on September 3, 2013, and was thus disqualified from receiving unemployment benefits. On November 3, 2013, Claimant appealed Issue 304.

On December 2, 2013, the Appeals Tribunal held a telephone hearing. On December 4, 2013, the Appeals Tribunal issued its decision holding that Claimant "is not disqualified for benefits by reason of the claimant's discharge from work on September 3, 2013." The Appeals Tribunal found that on August 26, 2013, Claimant was instructed to return her uniform and badge to Employer because there were no assignments for her other than the ones she had previously refused. Additionally, it found that Claimant last worked for Employer on June 3, 2013, and Employer "attempted unsuccessfully to place the claimant thereafter in some other assignments." The Appeals Tribunal found that Employer effectively discharged Claimant on September 3, 2013, when she returned her uniform and badge.

Regarding whether Claimant was discharged for misconduct connected with her work, the

4

Appeals Tribunal held that "on September 3, 2013, the employer discharged the claimant but not for misconduct connected with her work," because the "lack of work was not intentional, willful work-related misconduct on the claimant's part as defined in Section 288.030.1(23)." Accordingly, the Appeals Tribunal reversed the Deputy's determination and found "the claimant is not disqualified for benefits by reason of the claimant's discharge from work on September 3, 2013."

On December 31, 2013, the Employer appealed this decision and on January 30, 2014, the Commission in LC-14-00028 affirmed the decision of the Appeals Tribunal. Significantly, the record does not reflect that Employer appealed the decision to this Court.

On October 1, 2013, while Issue 304 was being decided and appealed, Claimant was sent another "Employment Separation Information Request: "Pending Issue" Questionnaire— Discharge Suspension" (Issue 305). This questionnaire asked Claimant questions regarding why she was discharged or suspended after June 3, 2013. Again, Claimant responded that she was neither discharged nor suspended and that she was laid off on June 4, 2013.

On November 1, 2013, another Deputy's determination found Claimant was "disqualified from June 4, 2013 because claimant left work with the above employer voluntarily without good cause attributable to her work or employer on June 4, 2014" (Issue 305). The Deputy determined that "the claimant quit because the employer changed her work location" and she "did not discuss her concerns with the employer."

On November 6, 2013, Claimant received the Deputy's determination regarding overpaid benefits in the amount of $1,290 because she was paid benefits "during a period of disqualification," from June 22, 2013, through August 24, 2013. (Issue 306)

On November 29, 2013, Claimant appealed the determination on Issue 305 and Issue 306

5

citing all of the previous decisions in her favor which conflicted with this determination.

On December 26, 2013, the Appeals Tribunal conducted another telephone hearing on Issue 305 and Issue 306. During this hearing, Claimant was asked why she believed the separation was a discharge as opposed to a quit:

> A: Okay. On uh, June 3, or June 4, I went into work and when I went into work I was told I could call the office and that I no longer worked at Bass Pro. I called the office. They told me to come in. They offered me a job uh, down, uh, off of for—somewhere off of Forsythe and uh, it was a split shift job, two hours in the afternoon, two hours at night. I did not accept that because of the driving back and forth, back and forth and uh, I don't know—and all of this has been appealed before and I—
>
> Q: No—no—no—no that's what I was try—no let me stop you there. That's what I'm trying—
>
> A: Okay.
>
> Q:--to let you know that there is a distinction in law in the cases regarding the first two cases. The first two cases talk about that after a separation and by the time a claimant becomes an insured worker filing for benefits….Those are the issues that were [already] adjudicated.
>
> \* \* \*
>
> I have no jurisdiction to—to uh, revisit the issue of the suitable work offer cases. There's two of them. I only have authority to look at the separation itself that apparently preceded the—the offers by a few days or whatever. Are you still having trouble grasping the idea that this is not a question of an offer of work for new employment, but this issue is today, if the employment started—stopped rather, in earlier June, was it because you quit, or because you were discharged?

Claimant was then asked to discuss the offer of the split shift job, even though she was earlier prevented from discussing it and, as Claimant testified, "all of this has been appealed before." Employer then admitted that in June 2013, Claimant was not separated because she still had the uniforms and she was still getting job offers from Employer.

On December 27, 2013, the Appeals Tribunal issued its decision on Issue 305 and Issue 306. For Issue 305, the Appeals Tribunal found that Claimant voluntarily left work without good cause attributable to the work or employer effective June 4, 2013 because she inadequately attempted to remedy all concerns of whether or not she still had a job. On Issue 306, the Appeals

6

Tribunal affirmed the Deputy's determination that Claimant was "overpaid $1,290 in benefits for the period June 16, 2013 through August 24, 2013, because the claimant was paid benefits for a period of disqualification." These decisions made no mention of the previous decision (LC-14-00028) which determined that Employer employed Claimant until her discharge in September 2013.

On January 27, 2014, Claimant appealed the decisions regarding Issue 305 and Issue 306 to the Commission. On March 5, 2014, the Commission affirmed the decision of the Appeals Tribunal on both issues, and adopted the Appeals Tribunal's decision as its own in both cases. On April 2, 2014, Claimant appealed the Commission's decisions to this Court. On January 7, 2015, following the filing of a joint motion by Claimant and the Division, this Court remanded the cases to the Commission to issue a new decision taking into account the Commission's decision in LC-14-00028 and to explain what the effect of that decision is "on the proper outcome of this case."

On January 27, 2015, after remand, the Commission issued new decisions in these consolidated cases. The Commission determined that a disqualification under Section 288.050 can be triggered when a claimant has "left work," even if the leaving is not a "complete severance" of the employment relationship. The Commission also held that it had determined that Claimant was discharged on September 3, 2013, and since the discharge was not for misconduct, that Claimant was not disqualified from benefits. The Commission also acknowledged that no one appealed the decision in that case, and that it was therefore final. Nevertheless, the Commission concluded:

> Our decision in LC-14-00028 is not inconsistent with our decision in the instant case (LC-14-00266). The decisions address two distinct changes to the employment relationship between employer and claimant. We analyzed the facts of each change independently and issued our decisions. We found claimant

7

responsible for the change that occurred in June 2013, because claimant could have continued being paid for performing work for employer but chose not to. The June 2013 change occurred under circumstances subjecting claimant to a disqualification under §288.051, and we so decided. We found employer responsible for the change that occurred in September 2013, because at that time employer made the decision to completely sever its employment relationship with claimant. The September 2013 change occurred under circumstances that did not subject claimant to a disqualification under §288.050.2, and we so decided.

The issues we were called upon to decide in LC-14-00028 and the instant appeal arose out of different events occurring three months apart. The doctrine of collateral estoppel, *res judicata*, and the law of the case did not bind us when we decided this case. For the foregoing reasons, our decision in LC-14-00028 has no effect on the proper outcome of this case.

On the same day, the Commission determined (LC-14-00267) that because it had found Claimant was ineligible for benefits, it was affirming the decision finding she was overpaid unemployment compensation benefits. Claimant now appeals both determinations.

### Standard of Review

Appellate review of the Commission's decision in an unemployment compensation case is governed by Section 288.210, RSMo 2000,[2] that provides that our power to "modify, reverse, remand for rehearing, or set aside the decision of the commission" is limited to finding one of the following grounds: (1) that the Commission acted without or in excess of its powers; (2) that the decision was procured by fraud; (3) that the facts found by the Commission do not support the award; or (4) that there was no sufficient competent evidence in the record to warrant the making of the award. Wooden v. Division of Emplyment Sec., 364 S.W.3d 750, 752 (Mo. App. W.D. 2012). "The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. Section 288.210. Therefore, while we give deference to the Commission's findings of fact, we are not bound by the Commission's

---

[2] Unless otherwise indicated, all further statutory references are to RSMo 2000 as amended.

8

conclusions of law or its application of law to the facts. Wooden, 364 S.W.3d at 753. Moreover, while the Commission's determination of whether an employee voluntarily left her employment or was discharged is ordinarily a factual determination, we are not bound by the Commission's conclusions of law or its application of the law to the facts. Difatta-Wheaton v. Dolphin Capital Corp., 271 S.W.3d 594, 595 (Mo. banc 2008). Any issues of law are to be reviewed *de novo*. Id.

Discussion

Claimant raises three interrelated points on appeal. For ease of discussion, we address them together. Claimant argues the Commission erred as a matter of law: (1) in determining that she voluntarily quit without good cause on June 4, 2013 because the Commission's decision failed to apply an earlier Commission decision which determined that Claimant was discharged on September 3, 2013, not for misconduct connected with her work but because Employer had no assignments for Claimant; (2) in finding that Claimant voluntarily quit her job without good cause attributable to her work or employer because her departure from work was not a quit because she was not offered a suitable alternative location to continue working and she was temporarily unemployed until her discharge on September 3, 2013, and; (3) in determining that Claimant owed an overpayment of unemployment compensation benefits because the Commission's underlying decision determining she left work without good cause was incorrect pursuant to Points I and II. We agree.

Here, the Commission determined on January 30, 2014, in LC-14-00028, that Employer employed Claimant until September 3, 2013, when it discharged her. The Appeals Tribunal and the Commission in the two cases now before us originally made no mention of LC-14-00028. It also appears from the record that one Appeals Tribunal was not aware of the other Appeals Tribunal ruling in the same case. In fact, in its own brief, the Division admits, "It is not clear

9

why the case proceeded on two separate tracks following the remand of [Issue 302 and Issue 301]."

What is clear is that the Commission, in its January 30, 2014 decision, determined that Claimant was discharged on September 3, 2013. The record does not show that Employer appealed the January 30, 2014, Commission's decision and, as such, we are now precluded from revisiting the question of whether Claimant voluntarily quit her job without good cause. See Croney v. Mo. Red Quarries, Inc., 353 S.W.3d 713, 718 (Mo. App. S.D. 2011) (where the Commission already determined that the claimant was not disqualified for benefits by reason of involuntary separation from work in a separate appeal to Commission, and where employer did not appeal the Commission's decision, the case is rendered moot and should be dismissed). The January 30, 2014, Commission's Order was final ten days after the date of notification to the parties, making the issues addressed by the Commission in March 5, 2014, Commission's Order moot. Section 288.200.2. Likewise, the Appeals Tribunal ruling on December 29, 2013 was a nullity and that case was moot, since on December 4, 2013 another Appeals Tribunal ruling on the same claim had determined Claimant was discharged but not for misconduct on September 3, 2013.

Moreover, collateral estoppal clearly applies in this case. Allen v. Titan Propane, LLC, 404 S.W.3d 914, 916 (Mo. App. S.D. 2013) ("[C]ollateral estoppel applies to final judgments and precludes re-litigation of the claims or issues decided therein in subsequent causes of action"). Here the issues in the two proceedings involved interrelated determinations: had Claimant voluntarily quit her job or was she fired at a later point because she had not quit. Claimant clearly raised the issue of collateral estoppel in the December 26, 2013 hearing when she said "all of this has been appealed before." The Commission's decision finding that

10

Claimant was discharged on September 3, 2013, because she was still employed and that she did not completely or partially, voluntarily quit, was binding and final. Therefore, the Commission erred in finding that Claimant voluntarily quit without good cause on June 4, 2013. Point I is granted.

In Point II, Claimant argues the Commission erred in finding that she voluntarily quit her job without good cause attributable to her work or employer because Claimant was removed from the location where she was working by her employer and was not offered a suitable alternative location to continue working. As such, her separation was beyond her control and she was "temporarily unemployed" until she was discharged on September 3, 2013. We agree.

A claimant is not entitled to unemployment benefits if the claimant left work voluntarily without good cause attributable to such work or to the claimant's employer, or if the claimant was discharged for misconduct connected with the claimant's work. Section 288.050.1(1); Korkutovic v. Gamel Co., 284 S.W.3d 653, 656 (Mo. App. E.D. 2009). "[W]hether an employee quits or is discharged may be determined by examining whether the employer or the employee committed the final act severing the employment relationship." Mauller v. Division of Employment Sec., 331 S.W.3d 714, 718 (Mo. App. W.D. 2011). The claimant has the burden of proving that she did not voluntarily leave employer's employment, or that if she did, she did so with good cause. Renda v. Eastern Metal Supply, 414 S.W.3d 556, 559 (Mo. App. E.D. 2013). Where the employee shows she did not leave work but was subjected to layoff by the employer, she can satisfy this burden. Renda, 414 S.W.3d at 559. "[A]n employee will not be held to have left voluntarily when the employer decides to end the employment relationship." Id.

Here, on June 4, 2013, Employer replaced Claimant at Bass Pro with a different cleaning crew. Employer did not discharge Claimant for misconduct when it removed her from Bass Pro

11

on June 4, 2013, and she did not quit on that day. Claimant was simply "removed" from the Bass Pro location and not placed in another suitable location as of June 4, 2013. Claimant was later discharged on September 3, 2013, because Employer had no additional suitable assignments for Claimant. Contrary to Employer's contentions, Claimant was still employed by Employer when she filed for unemployment benefits because she still had her uniform and badge until the Employer asked for her to return them in late August 2013, which is consistent with what was found by the Commission in its January 30, 2014 decision that Claimant had been discharged by Employer on September 3, 2013.

The issue before the Commission was Claimant's eligibility for benefits based on her appeal of the Deputy's determination finding "the claimant is disqualified from June 4, 2013 because the claimant left work with the above employer voluntarily without good cause attributable to her work or employer on June 4, 2013." According to the Appeals Tribunal, the remanded issue was to determine whether a separation involved around "that time" would constitute a disqualifying event or not. Claimant asserts that she could not have voluntarily quit because she was still employed when she filed her claim for unemployment benefits. Claimant's argument that she was removed from the location where she was working by her employer and was not offered a suitable alternative location to continue working is supported by the record. Her separation was beyond her control and she was "temporarily unemployed" until she was discharged on September 3, 2013. The Commission thus erred in determining that Claimant voluntarily quit her job without good cause attributable to her work or employer on June 4, 2013. Point II is granted.

With respect to Point III, and as argued above, Claimant was temporarily "totally unemployed" because while she was still employed by Employer and she was not earning any

wages as she was not placed at another suitable location.[3]  Since Claimant was temporarily

"totally unemployed" through no fault of her own, she is eligible for unemployment benefits

during the period from June 22, 2013 until August 24, 2013.  See Mauller, 331 S.W.3d at 719

(noting that "employees who are laid off for a period of time due to lack of work such as a lay off

may be eligible for benefits while they are 'temporarily unemployed.'")  Therefore, Commission

erred in determining Claimant is ineligible to receive unemployment benefits.  Given that the

issue of the overpayment is determined by our disposition of Points I and II, we find there is no

overpayment of benefits.

Conclusion

The decisions of the Commission finding Claimant ineligible for unemployment benefits

and that there was overpayment of benefits are reversed.

_____
Mary K. Hoff, Judge

Robert G. Dowd, Jr., Presiding Judge and Roy L. Richter, Judge, concur.

---

[3]  "[A]n individual shall be deemed 'totally unemployed' in any week during which the individual performs no services and with respect to which no wages are payable to such individual."  Section 288.030(28).