

# Missouri Court of Appeals

### Southern District

### Division One

JUSTICE – MALL, LLC,        )
        )
    Employer-Appellant,   )
        )
v.        )    No. SD34250
        )
JAMIE BOLAND,        )    **Filed:  Oct. 11, 2016**
        )
    Employee-Respondent,   )
        )
and        )
        )
DIVISION OF EMPLOYMENT        )
SECURITY,        )
        )
    Respondent.        )

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

### REVERSED AND REMANDED WITH INSTRUCTIONS

Justice – Mall, LLC ("Employer") appeals the decision of the Labor and Industrial Relations Commission ("the Commission") that Jamie Boland ("Employee") was not disqualified from receiving unemployment compensation benefits as a result of being discharged for misconduct.  *See* sections 288.030.1(23) and 288.050.2.[1]  In a single point

---

[1] RSMo Non-cum. Supp. 2014.  Section 288.030.1(23) defines **"[m]isconduct"** for purposes of unemployment compensation as:

1

relied on, Employer contends "the Commission acted without or in excess of its powers under [section] 288.210, in that the Appeals Tribunal did not provide Employer a reasonable opportunity for a fair hearing before rendering its decision when the Appeals Tribunal refused to allow Employer to call rebuttal witnesses to contradict and impeach [Employee]'s testimony." Finding merit in this claim, we reverse the order of the Commission and remand the matter to allow Employer to present its excluded rebuttal witnesses.

## Applicable Principles of Review and Governing Law

We review this matter to determine whether the Commission "acted without or in excess of its powers[.]"[2] Section 288.210(1).[3]

---

[C]onduct or failure to act in a manner that is connected with work, regardless of whether such conduct or failure to act occurs at the workplace or during work hours, which shall include:

(a) Conduct or a failure to act demonstrating knowing disregard of the employer's interest or a knowing violation of the standards which the employer expects of his or her employee;

(b) Conduct or a failure to act demonstrating carelessness or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or a knowing disregard of the employer's interest or of the employee's duties and obligations to the employer;

(c) A violation of an employer's no-call, no-show policy; chronic absenteeism or tardiness in violation of a known policy of the employer; or two or more unapproved absences following a written reprimand or warning relating to an unapproved absence unless such absences are protected by law;

(d) A knowing violation of a state standard or regulation by an employee of an employer licensed or certified by the state, which would cause the employer to be sanctioned or have its license or certification suspended or revoked; or

(e) A violation of an employer's rule, unless the employee can demonstrate that:

a. He or she did not know, and could not reasonably know, of the rule's requirements;

b. The rule is not lawful; or

c. The rule is not fairly or consistently enforced[.]

[2] When, as here, the Commission adopts findings of the Appeals Tribunal, we also review those findings. *See* ***Hubbell Mech. Supp. Co. v. Lindley***, 351 S.W.3d 799, 807 (Mo. App. S.D. 2011).
[3] RSMo 2000.

> In an administrative proceeding, due process is provided by affording parties the opportunity to be heard in a meaningful manner. The parties must have knowledge of the claims of his or her opponent, have a full opportunity to be heard, and to defend, enforce and protect his or her rights.

*Weinbaum v. Chick*, 223 S.W.3d 911, 913 (Mo. App. S.D. 2007) (citation and quotation omitted). The Commission exceeds its authority when it affirms an Appeals Tribunal determination based upon a record that reveals a party "was not provided a reasonable opportunity for a fair hearing[.]" *Id.* at 914.

Section 288.190.2 requires the Appeals Tribunal to conduct hearings "in accordance with regulations prescribed by the division for determining the rights of the parties[.]" Those regulations provide "each party . . . the right to call and examine witnesses, . . . to impeach any witness, . . . and to rebut the evidence against him/her[.]" Title 8 C.S.R. 10-5.015(10)(B)(2). "Evidence is admissible if it is not irrelevant, immaterial, privileged or unduly repetitious[,]" 8 C.S.R. 10-5.015(10)(B)(4), and disallowing relevant testimony may constitute the denial of a fair hearing. *Cf. Weinbaum*, 223 S.W.3d at 914 (disallowing testimony of proposed witness who had been suggested by another witness to possess relevant information denied the proponent "a full opportunity to be heard on the matter").

The employer bears the burden to prove misconduct by a preponderance of the evidence. *Wooden v. Div. of Emp't Sec.*, 364 S.W.3d 750, 753 (Mo. App. W.D. 2012). Whether particular conduct constitutes misconduct is a question of law on which we owe no deference to the Commission. *Id.*

3

**The Evidentiary Hearing**[4]

Because the second deputy involved in Employee's claim had found in favor of Employer on the issue of misconduct, Employer presented its evidence first. Included in a "packet of documents" provided to the parties by the Division of Employment Security ("the Division") and admitted into evidence was a list of behaviors submitted by Employer alleging, among other things, that Employee "[p]ermitted harassment of co-workers[.]" It also included this statement made by Employee to the initial deputy: "Co-workers may have called [another worker wearing a neck brace] crippled. I'm not sure. Nothing was mentioned to me about professionalism." Employer's evidence included exhibits and testimony by an operations manager, Keith Clavin, and Anntionette Veal, a coworker managed by Employee. Employer's counsel informed the Appeals Tribunal at the outset of the hearing that Employer would have "no other witnesses[.]"

Mr. Clavin testified that, through a series of promotions, Employee had become an assistant store manager and then a store manager on a probationary basis in July or August 2013. In February 2014, Employee signed a document ("the receipt") that acknowledged she had received "the Company's Employee Handbook" ("the handbook"). The receipt also stated that Employee understood that she was expected to read the handbook and that the policies in it applied to her. The receipt and the handbook were admitted into evidence.

Mr. Clavin testified that Employee was discharged on April 7, 2015 by an "overall store manager[,]" Kathy Cootwood. A form entitled "NOTICE OF SEPARATION" was admitted into evidence at the hearing, and Mr. Clavin testified that this form ("the discharge

---

[4] Employer protested Employee's claim for unemployment compensation, and a deputy initially determined that Employee was not disqualified for receiving benefits based on Employer's claim of misconduct. A different deputy reconsidered that decision and determined that Employee was disqualified for benefits due to misconduct connected with her work. It was Employee's appeal of that decision that led to the evidentiary hearing before the Appeals Tribunal.

4

form") was signed by both Ms. Cootwood and Employee. The discharge form included the circled word, "Termination[,]" along with the designation "Eligible for Rehire: Yes No" with the "No" circled. The discharge form had an area titled: "Reason for Separation (include specific details)[.]" On the blank lines provided thereafter, the single word "Performance" was handwritten.

Employee, who appeared *pro se*, provided testimony in response to questions posed by the Appeals Tribunal referee, and she offered two exhibits that were received into evidence. Employee then provided the following testimony when cross-examined by Employer's counsel. Employee said that she "never violated any company policies[,]" and "whatever [she] did was to the . . . best of [her] personal ability[.]" Employee's recollection was that she was told her services were no longer needed because Employer had restructured its operations. Employee recalled signing the discharge form, but she stated that when she signed the form it did not indicate that she was being terminated because of performance issues, and it was not marked to indicate that she was ineligible for rehiring.

Just prior to stating that he had completed his cross-examination of Employee, Employer's counsel stated that he would be calling Ms. Cootwood and Laura Williamson as witnesses to testify (by telephone) about how the discharge form appeared at the time it was signed by Employee. The referee observed that Employer had not identified either woman as a witness at the beginning of the hearing. Employer's counsel replied that he did not know that Employee was going to testify inconsistently with the discharge form, and his additional witnesses would impeach Employee's testimony by testifying that the discharge form "was completely filled out refuting [Employee's] testimony[.]" The referee ruled that

Employer's additional witnesses would not be allowed to testify because Employer had not followed the proper procedure of announcing them when the hearing began.

At the conclusion of Employee's presentation of evidence,  Employer's counsel announced Ms. Williamson and Ms. Cootwood as witnesses to testify "by telephone" right then "to refute the testimony of [Employee] with respect to [the discharge form] and what was completed or not completed when she signed it[.]"  Employer's counsel made an offer of proof as to what he expected that testimony to be, but the referee again refused to hear their testimony.

In its subsequent decision against Employer, the Appeals Tribunal found that "[s]ince there was conflicting evidence presented, the issue of credibility is before the [Appeals] Tribunal."  It then found "that [Employee's] testimony is more credible than the testimony of [E]mployer's witnesses."  The decision explained details of the evidence that led the Appeals Tribunal to find Employee "persuasive[,]" and it concluded:

> On the whole record the competent and substantial evidence shows that [Employee] was discharged due to restructuring.  Employer did show that [Employee] had some performance issues, but [E]mployer did not prove that [Employee] was discharged for performance.  Even if [E]mployer had discharged her for performance, the issues presented did not rise to a policy violation or to insubordination.

Employer appealed the decision of the Appeals Tribunal to the Commission.

The Commission adopted and incorporated those portions of the Appeals Tribunal's decision "not inconsistent with" its decision that Employee had not been discharged for misconduct.  Specifically, the Commission agreed with the Appeals Tribunal's finding that Employee's "testimony was more credible than that of [E]mployer's witnesses."  In doing so, however, the Commission explicitly found that "the referee erred by not allowing [E]mployer to call Ms. Coopwood [sic] to rebut [Employee's] unexpected testimony that the

6

[discharge form] she signed did not indicate the reason was for 'performance' and did not indicate she was not eligible for rehire." Despite that finding of error, the Commission "ultimately agree[d] with the result reached by the Appeals Tribunal" because it was "unable to discern evidence of anything more than possible poor job performance, the same reason cited by [E]mployer in the [discharge form] entered into evidence."

## Analysis

Employer contends it was denied "a reasonable opportunity for a fair hearing" when the Appeals Tribunal refused to hear testimony from "rebuttal witnesses to contradict and impeach [Employee's] testimony" and the ruling "was extremely prejudicial because credibility was a central issue in this matter." Employer maintains that testimony from its "proposed rebuttal witnesses would have provided additional factual evidence regarding the content of the [discharge form] as well as contradicting and impeaching [Employee's] testimony" such that it "could have altered the credibility determinations made by both the Appeals Tribunal and the Commission."

Even though "[t]he regulations give the referee considerable discretion in examining witnesses and controlling the procedures to be used during the hearing[,]" *Miller v. Bank of the West*, 264 S.W.3d 673, 678 (Mo. App. W.D. 2008), and the technical rules of evidence do not apply, fundamental principles of evidence are nonetheless applicable in administrative hearings. *See Stone v. Mo. Dept. of Health & Senior Servs.*, 350 S.W.3d 14, 21 (Mo. banc 2011). In the trial context, "[i]t is established law that '[a]ny competent testimony that tends to explain, counteract, repel or disprove evidence offered by [one party] may be offered in rebuttal.'" *Howard v. City of Kansas City*, 332 S.W.3d 772, 785 (Mo. banc 2011) (quoting *State v. Gardner*, 8 S.W.3d 66, 72 (Mo. banc 1999)). "Rebuttal

7

evidence is evidence that attempts to 'disprove or contradict' the evidence to which it is contrasted." *Id.* at 785 n.14. "As a general proposition, the credibility of witnesses is always a relevant issue in a lawsuit." *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc 2010) (quotation omitted). The regulation governing unemployment compensation hearings underscores the principles of impeachment and rebuttal by specifically permitting a party to "impeach any witness" and "rebut the evidence against" the party. 8 C.S.R. 10-5.015(10)(B)(2). Generally, "[t]he exclusion of proper evidence is presumed prejudicial unless otherwise shown." *Aliff v. Cody*, 26 S.W.3d 309, 321 (Mo. App. W.D. 2000).

The Division conceded at oral argument that the Appeals Tribunal erred in denying Employer the opportunity for rebuttal, but it argues that the error "is immaterial" because the discharge form simply documented poor job performance. In its brief, the Division argued that there was no indication that the proposed witnesses "would have provided evidence that [Employee] was discharged for misconduct[.]"

The Division's position is flawed because it fails to account for the fact that poor job performance is not necessarily excluded as a source of misconduct.[5] The question is whether the employee acted or failed to act in a statutorily-defined manner in connection with her work so as to commit misconduct. *See* sections 288.030.1(23) and 288.050.2. Conduct that is generally labeled by an employer as poor job performance in a particular case may constitute, for example, an employee's "knowing violation of the standards which the employer expects of his or her employee"; "a knowing disregard of the employer's interest"; or a violation of an employer's rule when the employee does not demonstrate:

---

[5] In contending "that poor work performance is generally not misconduct[,]" the Commission relies on *Hoover v. Cmty. Blood Ctr.*, 153 S.W.3d 9, 14 (Mo. App. W.D. 2005). However, the statutory definition of misconduct was significantly amended after the decision in *Hoover* was issued and before Employee was fired. *See* L.2014, S.B. No. 510, § A, eff. Aug. 28, 2014.

a. He or she did not know, and could not reasonably know, of the rule's requirements;

b. The rule is not lawful; or

c. The rule is not fairly or consistently enforced[.]

Section 288.030.1(23)(a), (b), and (e).  In any event, no such determination is necessary here because Employer correctly asserts that the Commission acted without or in excess of its powers by issuing its decision before considering Employer's relevant rebuttal evidence.

Employer's point is granted, the order of the Commission is reversed, and the case is remanded to allow Employer's witnesses Cootwood and Williamson the opportunity to testify.

DON E. BURRELL, J. – OPINION AUTHOR

JEFFREY W. BATES, P.J. – CONCURS

MARY W. SHEFFIELD, C.J. – CONCURS